ABSALOM BACKUS, JR. v. THE CITY OF DETROIT.

*Public right of wharfage where streets abut on streams.*

A city has a right to build a wharf for public purposes where any street, which has been duly dedicated to the public abuts upon a navigable stream.

It is unimportant to this right whether the law of the State does or does not recognize in the bank owner a title to the land under the water to the middle of the stream.

Appeal from the Superior Court of Detroit. Submitted June 23. Decided October 4.

INJUNCTION bill. Defendant appeals. Reversed.

*Barbour & Rexford* and *F. A. Baker* for complainant.

City Counselor *Henry M. Duffield* for defendant.

COOLEY, J. Complainant is owner of lots numbered 31 to 36 inclusive, on a subdivision of part of the Loranger farm, south of Fort street in the city of Detroit, being part of private claims 338 and 474. The subdivision was made by a plat duly executed July 24, 1863, by Rosalie Loranger,

then the owner, through whose conveyance complainant derives title. The lots all front on the Detroit river, and appear from the plat to be bounded upon it. Between lots 33 and 34 the plat shows a street 30 feet in width extending to the river. In front of lots 34, 35 and 36 complainant has constructed a wharf two hundred and eighty-five feet in length, and in front of lot 33 another wharf two hundred and seventy feet in length, and the space between, being 30 feet in width between the side lines of the street extended, has been excavated by complainant for a slip, and is now used by him as such. The title, if any, which remained in Rosalie Loranger to the land under water between the street lines as thus extended, complainant claims to have acquired by conveyances. The city of Detroit, however, claims that by the plat a way was dedicated, not to the bank merely, but "up to and over the waters of the Detroit river to the channel bank thereof, or as far towards the same as should be desirable or necessary to the people of the city of Detroit;" and that the dedication so made was duly accepted by the city. The charter of the city confers power upon the common council to erect, repair and regulate public wharves and docks at the ends of streets, or on the property of the city, and acting in the assumed exercise of this authority the city has entered into a contract with parties named in the bill for the construction of a wharf in extension of said street to the outer line of complainant's wharves aforesaid.

This is an injunction bill to restrain the construction by the city of the wharf for whose construction a contract has been made. The Superior Court granted the relief prayed. It does not appear what use the city proposes to make of the wharf when constructed, and the complainant contests the right to construct it for any purpose whatever. His claim is that the slip is entirely upon his own land, and that the dedication terminated at the shore. If, therefore, the city has no authority to construct the wharf for any purpose, the decree from which the city has appealed must stand; but if the city may construct it for some purposes,

but not for others, we should assume that the purpose intended was lawful, and sustain the appeal.

This is an important question, for it is one that arises in many places, and considerable interests are likely to depend upon it whenever the land affected by the supposed dedication is valuable for commercial purposes. Each party claims that the position contended for is eminently reasonable and just, and asks judgment on that basis. But each party claims also that its contention is sustained by authority.

The river Detroit is a navigable river, in the American sense of that term. The site of the proposed wharf is covered by navigable water. It is not claimed that the wharf, if constructed, will in any degree obstruct or embarrass navigation, and if a private individual were owner of the bank, his right to construct the wharf would be conceded. In examining the case on authority, however, we are subject to some embarrassment in the application of cases decided arising from the different rules which prevail in different jurisdictions respecting the ownership of land under navigable waters, and also in the same jurisdictions, depending on the fact that the water is or is not navigable, in the common-law sense, as distinguished from the American sense of that term. At the common law the title to all land on navigable waters below high-water mark is in the sovereign; but navigable waters are only those where the tide ebbs and flows. This rule was so far modified, in its adoption in some of the American colonies, as to extend the bank ownership to low-water mark, but in other respects it remains the law of this country at the present time. At the common law the ownership of the banks of fresh-water streams, whether subject to public easements or not, extended to the middle of the stream, and if a river was capable of being navigated, the riparian proprietors were at liberty to make any use of the soil under it which was not inconsistent with the public easement, subject of course to the restraining, regulating and controlling authority of the sovereign power. They might, therefore, erect docks on ground below the line of either high or low water, provided no

State regulation forbade, and no actual impediment to navigation was created. These are familiar rules. But in this country so many large rivers exist with a capacity for navigation quite beyond that of any fresh-water stream known to the common law, that some eminent judicial tribunals have thought that the common-law rule of riparian ownership should be modified to adapt it to the different circumstances. They have, therefore, held that upon the large fresh-water streams of the country, which are navigable in the popular sense of that term, the riparian ownership must be limited to the water line,—whether high-water line or low-water line has not always been indicated,—and that while the public have an easement in the use of the water beyond that line, the State itself is owner of the soil under the water. This is the rule declared, or by implication recognized in *Wilson v. Forbes* 2 Dev. 30; *Collins v. Benbury* 3 Ired. 277; s. c. 5 Ired. 118; *State v. Glen* 7 Jones (N. C. L.) 321; *Bullock v. Wilson* 2 Port. 436; *Thurman v. Morrison* 14 B. Mon. 367; *Morrison v. Thurman* 17 B. Mon. 249; *State v. Jersey City* 25 N. J. 525; *McManus v. Carmichael* 3 Iowa 57; *Haight v. Keokuk* 4 Iowa 199; *Tomlin v. Railroad Co.* 32 Iowa 106; *Bainbridge v. Sherlock* 29 Ind. 364; *Bailey v. Railroad Co.* 4 Harr. 389; *Bates v. Illinois Cent. R. R. Co.* 1 Black 204; *Barney v. Keokuk* 94 U. S. 324; *Wood v. Fowler* 26 Kan. 682. Some of these cases go so far as substantially to deprive the owner of the bank of all riparian rights whatever, and to limit his privileges within the lines of his ownership, one boundary of which is held to be the river bank. Thus in *Bailey v. Railroad Co.*, supra, it was held to be within the power of the State to permit a railroad company to construct a closed bridge across a navigable river, and that riparian proprietors above had no cause of action for the resulting injury; in *Wood v. Fowler*, supra, the bank proprietor on the Kansas river was held to have no right of action or interference as against a stranger cutting and removing the ice which formed immediately in front of him; and in *Tomlin v. Railroad Co.*, supra, the authority of the State

49 MICH.—8

to permit a railroad company to take possession of the land below ordinary high-water mark on the Mississippi river, and to cut off the bank proprietor from access to it, was sustained. But in any view that may be taken of the line of ownership, the cases last cited appear unsound, and in the recent case of *Railway Co. v. Renwick* 102 U. S. 180, the better and more sensible doctrine is laid down that the land under the water in front of a riparian proprietor, though beyond the line of private ownership, cannot be taken and appropriated to a public purpose without making compensation to the riparian proprietor.

Other courts have not considered that the greater size of the American rivers was a circumstance that should vary the rule of private ownership on navigable fresh-water streams, and they have held to and applied the common-law doctrine that the line of private ownership is the middle of the stream: *Adams v. Pease* 2 Conn. 481; *Stuart v. Clark's Lessee* 2 Swan 9; *Gavit's Admrs. v. Chambers* 3 Ohio 496; *June v. Purcell* 36 Ohio St. 396; *Walker v. Board of Public Works* 16 Ohio 540; *O'Fallon v. Daggett* 4 Mo. 343; *Middleton v. Pritchard* 4 Ill. 510; *Canal Trustees v. Haven* 10 Ill. 548; *Houck v. Yates* 82 Ill. 179; *Washington Ice Co. v. Shortall* 101 Ill. 46; *Ingraham v. Wilkinson* 4 Pick. 268; *Commonwealth v. Chapin* 5 Pick. 199; *Knight v. Wilder* 2 Cush. 199; *Canal Commissioners v. Kempshall* 26 Wend. 404; *Browne v. Kennedy* 5 H. & J. 195; *Jones v. Pettibone* 2 Wis. 308; *Mariner v. Schulte* 13 Wis. 692; *Arnold v. Elmore* 16 Wis. 509; *Mc Cullough v. Wall* 4 Rich. 68; *Brown v. Chadbourne* 31 Me. 9; *Rundle v. Delaware, etc. Canal* 1 Wall. Jr. 275; *Hart v. Hill* 1 Whart. 124; *Morgan v. Reading* 11 Miss. 366; *Steam-Boat Magnolia v. Marshall* 39 Miss. 110; *Minto v. Delaney* 7 Ore. 337; *Moore v. Willamette etc. Co.* 7 Ore. 355; *Schurmeier v. Railroad Co.* 10 Minn. 82. And these cases, so far as they declare the principle mentioned, have had the approval of this Court. *Lorman v. Benson* 8 Mich. 18; *Ryan v. Brown* 18 Mich. 196; *Watson v. Peters* 26 Mich. 517; *Bay City Gas Light Co. v. Industrial Works*

28 Mich. 182. The reason is well stated by Hosmer J. in *Adams v. Pease* 2 Conn. 481, 484, when he says that the doctrine of the common law, to which we adhere, " promotes the grand ends of civil society, by pursuing that wise and orderly maxim of assigning to everything capable of ownership, a legal and determinate owner." See *Richardson v. Prentiss* 48 Mich. 88.

If, therefore, according to the law as it exists and is recognized in this State, the strip of land which constitutes a street extending to the river bank between lots 33 and 34, had been granted by Loranger to an individual, the grantee, or any one claiming under him, would have had an undoubted right to construct the wharf in question. As before stated, it interferes in no manner with the navigation, and the ostensible purpose in constructing it is to aid navigation, not to hinder or embarrass it. But the strip of land was not granted to an individual, but was dedicated to the use of the public as a street. The city is not the public, though it represents the public for all the purposes of control, repair and improvement of the street. The plat, under the statute which was in force when it was made and recorded, passed the fee in all streets marked upon it to the county in which the city is situated : Comp. L. § 1345 ; but this was only in trust for street purposes. We attach no special importance to the fact that the title passed instead of a mere easement. The purpose of the statute is not to give the county the usual rights of a proprietor, but to preclude questions which might arise respecting the public uses, other than those of mere passage, to which the land might be devoted. The common-law dedication would be sufficient to estop the owner from setting up any claim or asserting any right to the prejudice of the easement. *Cincinnati v. White's Lessee* 6 Pet. 431 ; *Hunter v. Sandy Hill* 6 Hill 407 ; *Dubuque v. Maloney* 9 Iowa 450 ; *Schurmeier v. Railroad Co.* 10 Minn. 82 ; *Brown v. Manning* 6 Ohio 298 : s. c. 27 Am. Dec. 255 ; *Tinges v. Baltimore* 51 Md. 600 ; and this is all that is important here.

Complainant refers to several cases in support of his view

of the case. *Boston v. Lecraw* 17 How. 427 seems to us to have no important bearing. A street was laid out to high-water mark on tide-water. By the law of Massachusetts, the land between high-water mark and low-water mark was subject to grant and individual enjoyment, and it had been granted to and held by the town of Boston. From the end of the street at high-water mark across this private domain of the town, which indisputably the town might improve and occupy, Lecraw claimed that the public had acquired a right of passage by dedication. This was the point of contention in the case, and was decided in favor of the town. The subsequent case of *Richardson v. Boston* 19 How. 263, and 24 How. 188 throws no light upon this controversy. In *Kean v. Stetson* 5 Pick. 492, the right to lay out a town road between high-water and low-water mark on tide-water was denied. The reason assigned was that the town highway would impede more or less the public right of passage in the natural highway already existing; and this could not be done by the towns without license from the Legislature. The same ruling had previously been made in *Commonwealth v. Charlestown* 1 Pick. 180, and was sanctioned in *Simmons v. Mumford* 2 R. I. 173. But no doubt under proper legislative authority the road might have been laid, though whether it could or not seems unimportant to the question whether a bank proprietor whose ownership to the center of the river is conceded, must limit or must be presumed to limit his dedication to the shore line.

*Prosser v. Wapello County* 18 Iowa 327, though having more apparent relevancy, is really no more important. It it must be borne in mind that in Iowa the boundary of private ownership on navigable fresh-water rivers is at the bank. It was proposed to lay out a public highway across the land of a non-consenting proprietor to the river Des Moines, and the land-owner contended that this would deprive him of an existing ferry landing, and enable the landing to be made use of for the ferry of a third party. On this contention he claimed large damages. The court held *first*, that no ferry could be established there except

under the grant of a franchise, and that he, as land-owner, would have the first claim to such a grant—following, as to this, *Memphis v. Overton* 3 Yerg. 387; and *second*, that laying out a highway to the river bank would not entitle the holder of a ferry franchise, not being the owner of the land, to make the highway a ferry landing. The reason for this second conclusion was that the appropriation of the land for a highway was the appropriation for an easement over land only, and not over water, that the fee remained in the original owner, and to take it for a ferry landing would be the imposition of a new burden upon it, entitling the owner to further compensation. Whether this is correct or not we do not care to question. Compare *Murray v. Menefee* 20 Ark. 561. It is enough for our purposes that the decision is grounded upon the private ownership in the land, subject to the easement, which of itself will sufficiently distinguish the case from this. Here the fee passed from Loranger by the dedication, and the street became subject to all the ordinary uses of city streets. And one of these uses is for a ferry landing when a franchise for the purpose has been obtained.

There are a number of cases favoring the right of the city which are more directly in point, and some of which are referred to by counsel. In *Barclay v. Howell's Lessee* 6 Pet. 500, 512, it is declared that if a street as laid out is bounded by a navigable river, it is limited on that side only by the public right. "To contend that between this boundary and the public right, a private and hostile right could exist, would not only be unreasonable, but against law." In *People v. Lambier* 5 Denio 9 it was decided that a proprietor through whose land a highway extended terminating on navigable water, could not by filling up the land in front obstruct the public right of passage from the land to the water; but that the street was, by operation of law, extended from the former terminus, over the newly-made land to the water. This decision was approved in *Newark etc. Co. v. Newark* 15 N. J. Eq. 64, and the court in that case disposes of some objections which are suggested by the cases from Massachusetts before

referred to. "It is objected," says the court, "that a high-way cannot be laid across a navigable river. It may be admitted that there is no subsisting highway for horses or carriages in the channel of the river. But it is enough, for all the purposes of this cause, that the survey carries the highway to the river, and wherever the river is found there the highway extends. If the shore is extended into the water by alluvial deposits, or is filled in by the proprietor of the soil, the public easement is, by operation of law, extended from its former terminus over the new-made land to the water. The owner of the soil, in whom the unquestioned title is, cannot, by filling in, and thus extending his land toward the water, obstruct the public right of way to the river." The same doctrine had been previously laid down in *Mayor of Jersey City v. Morris C. & B. Co.* 12 N. J. Eq. 547, and it is reiterated in *Hoboken L. & I. Co. v. Hoboken* 36 N. J. 540. In this last case it is held that if the State authorizes private individuals to fill in and appropriate the water-front, a street running to the water is extended as the filling goes on.

That accretions in front of land dedicated to public use go to increase the land thus dedicated is decided in *New Orleans v. United States* 10 Pet. 662; *Godfrey v. Alton* 12 Ill. 29; *Cook v. Burlington* 30 Iowa 94; as well as in the New Jersey cases referred to. In *Barney v. Baltimore* 1 Hughes 118, it is decided that if one dedicates a street which runs to navigable water, he thereby surrenders it for use as a wharf where vessels may load and unload. The same principle seems to be recognized in *Dugan v. Baltimore* 5 Gill & J. 374, and is more formally declared in *McMurray v. Mayor etc. of Baltimore* 54 Md. 103. In that case the following language is used: "In our judgment the dedication of Cross street to the public use as a street extending to the water, carried with it by necessary implication, the right of the city to extend it into the harbor by the construction of a wharf at the end thereof." Authority, therefore, is very clearly and decidedly with the city, and the cases which favor its claim make no account of the

question whether the title to the land under the water was or was not in the proprietor of the shore.

But an argument on the statute is made for complainant which requires some attention. The statute for making and recording town plats requires that the plat shall particularly set forth and describe all streets, etc., by their courses, lengths, widths, etc. Comp. L. § 1345. The plat in this case gave the width of the street which was laid down upon it, and also, by giving the dimensions of the lots, gave the length also. The argument is that the plat dedicated to public use so much in width and so much in length, and no more, limiting the donation within the exact lines which would give that length and breadth. If this is the case, the proprietor might immediately on recording the plat have proceeded to take possession of the land at the end of the street; might have erected across it a barrier to prevent the public having access to the navigable water; might have sold it for the purposes of a ware-house, or made any other use which a private owner may lawfully make of his own possessions. It cannot be questioned that if she had asserted, exercised and been sustained in any such a right, it would have been a surprise to people purchasing lots embraced in the plat. They must have supposed that in dedicating a way to the river she was giving to the public access to the river, and not merely to a wall on its bank or some other obstruction put up to preclude access. It must have been understood by them, as it was by an eminent court under the circumstances of a similar dedication, that "the purpose was to provide means of access for the public to navigable waters," and that "such was the scope and purpose of the dedication." *Hoboken L. & I. Co. v. Hoboken* 36 N. J. 540–546. If Loranger had sold off every lot on her plat would it have entered into the head of any of her grantees that she still had upon the plat something which was salable? We think not. Whatever on the plat was not marked off as lots was dedicated to the public; and as the grant to an individual, when bounded by the water, extended to the middle line of the river, so the gift to the public had a similar extension. The

dedication to the shore line no more had the effect to restrict the public use to that line than would a grant that was similarly bounded. The gift in the one case and grant in the other is to the river, and leaves in the donor or grantor nothing beyond.

But it is not to be inferred, from what is above said, that in our opinion the city has a right to appropriate the end of the street to private uses, or to any uses inconsistent with the dedication. It would be premature for us to undertake to indicate precisely what the city may and what it may not do, since the question is not now before us. It is enough for us to say that the city derives its authority from the dedication of the public way, and that the construction of a wharf which shall give the means of access from the highway by land to the highway by water, is not inconsistent with the gift.

The decree must be reversed and the bill dismissed with costs of both courts.

The other Justices concurred.