## TELEPHONE POLES IN THE CURB LINE.

[Superior Court of Cincinnati, sitting in General Term.]

FANNIE TANNIAN v. THE CITY & SUBURBAN TELEGRAPH ASSO-
CIATION, A CORPORATION, ETC.

Decided, May, 1903

*Mandatory Injunction—Abutting Owner—His Rights in the Street—Dam-
ages—Telephone Poles a New Servitude.*

A telephone company has no right in Ohio to place its poles in the sidewalk
or the curb line of a street without first obtaining the consent of the
abutting property owner, or payment to him of the amount of damages
which will be caused to his property by the erection of such poles.

FERRIS, J.; DEMPSEY, J., and SPIEGEL, J., concur.

The original action was brought to compel the defendant in
error by mandatory injunction to remove four telephone poles that
had been placed along the curb in the sidewalk abutting upon prem-
ises owned by the plaintiff and situated at the corner of Chase and
Dane streets in the city of Cincinnati. Upon the hearing had upon
the pleadings and the evidence, the court at special term denied the
prayer of the petition and entered a decree for the defendant.

The testimony in the case discloses the fact that the defendant
company had erected the four poles in the sidewalk opposite the
plaintiff's property between the cement sidewalks and the curbs.
One of the poles was placed on Chase avenue about ten feet from
the corner; another on Dane street about the same distance from
the intersection of Dane and Chase avenue; another pole was placed
on Chase avenue about one hundred and fifty feet from the corner,
while the fourth was placed on Dane street about the distance of
one hundred feet. This latter pole seems to have been in its present
position for many years; as to the other poles the testimony shows
that they were erected within recent date, against the wishes and
protest of the present plaintiff in error.

The erection of the poles recently placed in front of the property
of the plaintiff in error caused the application to be made in the
court below for a mandatory order of injunction, in which it was
sought to compel the defendant to take down all of the poles
placed upon the property of the plaintiff in error without consent.

Thus it raised the question as to the right of a telephone company to place its poles on the sidewalk or curb line of a street without the consent of the owner of the abutting property, or the payment of damages to him caused to his property by such erection.   And it will be necessary to make an examination of the authorities of this state to determine the rights of the plaintiff in error in the streets, for the purpose of reaching a conclusion as to whether the occupation of the street, for such a use as is shown by the testimony in the case, is consistent with their original design.

We believe that the law of Ohio is reasonably clear upon this subject, and that therefore it will not be necessary to examine the decisions of the courts outside of this state for the purpose of determining the rights of a telephone company to erect poles in the streets or highways or sidewalks, without the consent of the owner of the abutting property.

Does the erection of a telephone pole create a new servitude, or is it such a use of the street as was in contemplation at the time of the original dedication of the same?   It would hardly seem to be necessary in this connection to point out that there has been no conflict of authority in this state as to the proposition, that an owner of land adjoining a public highway has title that extends to the center of the street and has a property interest in all that relates to the highway to such point, and has full right to the use and occupation subject only to the use of such street for public travel.

In the case of *Daily* v. *State,* 51 O. S., 348, the precise question that was raised in this case was discussed and fully met.   It was no new doctrine that was announced by Judge Spear, when he said, at page 358:

"The rule of law rests upon the clear ground that the appropriation of public highways for the purpose of telegraph lines was a new use.   The highways were originally dedicated for the purpose of public travel, and not for the purpose of telegraph lines.   Hence the new use imposed an additional burden.   The statutes of Ohio grant to telephone companies secondary and subordinate, rather than coordinate rights with travelers, which fact is apparent in the provisions that the lines are to be so constructed as not to interfere with the public use of the highways.   (*Railway Co.* v. *Telegraph Association,* 48 Ohio St., 390.)   The presence in the

statutes of provisions for the protection of private rights where lines are built on private lands and the absence of such provision where the highways are, used, is strong indication, as it seems to us, that the purpose was to avoid any interference with the rights of adjoining land owners. And the conclusion seems inevitable, taking the language of the entire statute upon the subject, that, whatever grant of right in the highways is given telegraph companies as against the public, no right is attempted to be given them as against individuals. The question of legislative power, therefore, to authorize a telegraph company to take the interests of the adjoining land owner in the highway without compensation, need not be considered.

"It follows that before the telegraph company could possess a right in such measure as to interfere with the right of the land owner in the highway, it would be required to acquire that right in some one of the ways known to the law. It is not pretended that any such method has been resorted to. Hence, the entry upon the land by the company was as to such right not a rightful entry."

In that case the court had before it the right of the adjoining land owner in trees that were cultivated by him, which trees were situated in the line of the highway and were being interfered with by a telegraph company without obtaining consent or in any way appropriating the right so to do, and the court passing upon the right of the owner of the adjoining land concluded that he had "the right to their full enjoyment subject only to the convenience of public travel; that his property in the trees was a legitimate subject of protection by state legislation."

And the court in the case of *Callen* v. *Electric Light Co.*, 66 O. S., 166, in the syllabus, says:

"2. An owner of a lot abutting on such street has a property interest in the street in front of his lot which cannot be taken against his will except upo nthe terms provided by the Constitution, viz., that a compensation shall first be made in money or a deposit of money. *Crawford* v. *Delaware*, 7 Ohio St., 459; *Railway Co.* v. *Cumminsville*, 14 Ohio St., 523, and *Railway Co.* v. *Lawrence*, 38 Ohio St., 41, approved and followed.

"3. The placing by a private lighting company of poles at the curb in a street, and the stringing thereon of electric light cable lines and wires for the purpose of furnishing light and energy to private takers, is a diversion of the street from the purpose to which it was dedicated, and is a taking of the property of the abutting owner within the meaning of Section 19 of the Bill of Rights. And such placing of poles, lines and wires is none the less an unauthorized taking even though it be consented to by the city authorities.

"4. And where it appears that the acts of the lighting company in so placing its poles, lines and wires were done without the knowledge or consent of the lot owner, and that their maintenance will work injury to his property, appreciable in character and amount, such owner has a right to an injunction against such maintenance and an order for removal."

The plaintiff in that case was the owner of a number of lots in the city of Columbus situated at the corner of streets adapted to residence purposes. Poles for fire alarms and telegraph purposes were placed in the alley in the rear, and in front of the plaintiff's lots, without permission and never having paid nor offered to pay any compensation or damages, and never having acquired a right to erect the poles by appropriation proceedings. The relief sought for in the case was by way of perpetual mandatory injunction. And the court, after discussing the distinctions that had been made between country highways and streets, so far as the interest of the owner of lands abutting upon such highways or streets is concerned, uses the following language :

"It would be idle now to discuss at length the character of this right of the owner of abutting land in the street. By repeated adjudications it is declared to be a right which attaches to his property, and as expressed by Swan, J., in the Delaware case, and quoted by Ranney, J., in the Cumminsville case, and by White, J., in the Lawrence case, is 'as much property as the lot itself.' And if, as held by these adjudications, the owner's right in the street is to be treated as property, the only remaining question is whether or not the acts of the defendant complained of constitute, in an essential degree, a taking of that property within the meaning of the Constitution. And here we inquire what is meant by the word 'property?' If, as was once understood, and is still understood by some, it means only a corporal thing, as a horse or a piece of land, then a negative answer to the question would seem to follow. If, however, the true meaning is the right of property in and dominion over the specific things, then we would seem to be led to a different answer. That the latter meaning is the true one appears now to be the settled doctrine. Under this definition the word 'property' is held to denote certain rights in things which pertain to persons and which are created and sanctioned by law. They are as stated by one writer, 'the right of user, the right of exclusion and the right of disposition. * * * A person's right of property in things, therefore, consists of the right to possess, use and dispose thereof in such manner as is not incon-

sistent with law.' Lewis on Eminent Domain,. Section 54, and authorities cited. As put by Shaw, C.-J., in *Railroad* v. *Plymouth,* 14 Gray, 161: 'The word "property" in the tenth section of the Bill of Rights, which provides that whenever the public exigencies require that the property of any individual shall be appropriated to public uses, he shall receive a reasonable compensation therefor, should have such a liberal construction as to include every valuable interest which can be enjoined as property and recognized as such.' That this is the meaning intended by the previous adjudications of this court which have been cited, we think there can be no reasonable doubt."

And further the court says, page 178:

"If the owner's right in the street be property, as hereinbefore defined, and as such is protected by the Constitution, it inevitably follows that the attempt by a private corporation, in order to accomplish its own private business purposes, to invade that right by placing in the street in front of the lot permanent erections which will, in any appreciable degree, impair the owner's access to the lot, or otherwise interfere with the full enjoyment of the lot for all purposes to which it is adapted, or of the street itself, such an invasion is an attempted taking; it is a diversion of the use of the street from the purposes originally designated for it, and if it can be taken at all as against the will of the owner, it must be upon the terms prescribed by the Constitution." *Railway Co.* v. *Tel. Assn.,* 48 O. S., 390; *Railway Co.* v. *Campbell,* 51 O. S., 328; *Daily* v. *State,* 51 O. S., 348; *Kramer* v. *Railway Co.,* 53 O. S., 436; *Craig* v. *Railway Co.,* 39 N. Y., 404; Dillon's Munic. Corp., Sec. 698*a*; *Backus* v. *Detroit,* 49 Mich., 110; Pierce on Railroads, 241."

Whatever the law may be in other states, from the time of the announcement of the case of *Crawford* v. *Delaware* until the present time it has been settled that the rights of the public and the abutting property owner in the highway are entirely separate and distinct from each other, and that the *public* has a right of passage and the right to improve and use the public highway only in the manner and for the purposes contemplated at the time it was established, and that the *abutting property owner* has the right to all uses of the land not inconsistent with this right of passage and improvement. And as bearing upon the rights of the adjacent owner it has been frequently held in this state that such "uses" include the right of a free and convenient "easement of access" to

and from the highway at all points along his frontage.   14 O. S., 523; *Branahan* v. *Hotel,* 39 O. S., 333.

We are therefore of the opinion that the decisions above referred to indicate plainly the rule that is to be adopted in the case at bar.   The plaintiff's prayer is that the defendant, its agents and employes, be restrained and enjoined from further erecting or taking any steps to erect any poles upon the said premises, and that they be required to remove the poles already erected, and replace and put the premises in the same condition it was previous to the commission of the acts complained of.   We regard the facts shown by the testimony and substantially admitted in this case to be an interference with the property right of the plaintiff in the street, and the prayer of the petition for a mandatory injunction should be allowed.   And we are further of the opinion that inasmuch as the testimony shows that the defendant in error has erected poles upon the premises against the protest of the plaintiff in error and without permission, and thus interfering with her rights, that the defendant in error move all the material and obstructions placed in the public highway by it and restore the same to the condition in which it was at the time and before the commencement of said work complained of in the petition.

*Galvin & Bauer,* for plaintiff in error.

*Peck, Shaffer & Peck,* and *Outcalt & Foraker,* for defendant in error.