## McCLOSKEY v. PACIFIC COAST CO.

(Circuit Court of Appeals, Ninth Circuit. February 17, 1908.)

### No. 1,414.

1. COMMON LAW—APPLICATION IN ALASKA.

The common law, by act of Congress, has been declared to be in force in the territory of Alaska.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Common Law, §§ 9–11.]

2. NAVIGABLE WATERS—LITTORAL RIGHTS.

Under the common law the King was the owner of the bed of the ocean and of everything below the line of ordinary high tide, the littoral owner holding only to the line of ordinary high tide, with the right of access to the navigable waters in front of his land and every part thereof, though, like a riparian proprietor, he had a right to the water frontage belonging by nature to his land, a right distinct from the right of navigation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 184, 241–244.]

3. SAME—RIGHT OF ACCESS—INJUNCTION.

A littoral owner, while not entitled to wharf out on the tide lands in front of his property, is entitled to an injunction against the erection of any structure on such lands or in the water in front thereof which would interfere with his right of access.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 241–244.]

4. PUBLIC LANDS—TOWN-SITE ENTRY—DEDICATION BY TRUSTEE.

Where a town site is located on public land, as authorized by Rev. St. § 2387 (U. S. Comp. St. 1901, p. 1457), a trustee of the town site takes title for the individual occupants of the town, and also for the occupants collectively as a community, and therefore has no power as against the individual occupants to dedicate land in the site to public use for street purposes.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 91.]

5. SAME—LEGAL TITLE—TRUSTS.

On the establishment of a town site on public land, as authorized by Rev. St. § 2387 (U. S. Comp. St. 1901, p. 1457), a legal title is vested in the trustee in his official and public capacity, and, simultaneously with the entry, there is vested in the beneficiaries an absolute right in the trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 87.]

6. SAME—STREETS—DEDICATION.

The streets contemplated by the act, providing for the establishment of town sites on public land, and as to which a public right attaches, are those which in fact existed at the time of the town-site entry either by actual use or dedication; the trustee being without authority by any act of his own to dedicate a street.

7. SAME.

A claimant under the town-site law may, before his right to a deed is established, by his acts make a common-law dedication binding as to him, and such as will operate as an estoppel in pais.

8. SAME—EVIDENCE.

When a town-site entry was made, a sidewalk above high tide line, and a roadway below such line, had been in continual public use for more than 12 years. The trustee of the town site caused the map to designate the sidewalk as a public walk, after which the owners of the upland made

no objection to the map or the continuous use of the walk, and five years after the entry such owners accepted deeds from the trustee in which the property conveyed was described as lots and blocks, which abutted on the sidewalk in accordance with the map; the deeds also reciting that the trustee had entered the land in trust for the several use of the occupants, and had made survey thereof into lots, blocks, squares, streets, and alleys, after which complainant by deed to the city quitclaimed an easement for public use of the street or roadway then "occupied and used." *Held*, that such facts operated as a dedication by complainant and its grantors of the land so used to the public for street purposes.

9. DEDICATION—DEDICATION OF STREET—EFFECT.

Where complainant and its grantors dedicated land bordering on the sea to a city for street purposes, such dedication operated to merge in the public right complainant's individual right of access to the open navigable waters in front of complainant's remaining land.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Dedication, §§ 93, 94.]

10. NUISANCE—NAVIGABLE WATERS—OBSTRUCTIONS TO ACCESS—INJUNCTION.

One who has been divested of littoral rights cannot maintain a suit to enjoin obstructions to his access to navigable waters in front of his land, under the rule that individuals are not entitled to redress against a public nuisance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Nuisance, § 163.]

11. APPEAL—REVIEW—INJUNCTION—ERRONEOUS THEORY.

A decree awarding an injunction will not be disturbed on appeal, though based on an erroneous theory, if the pleadings and proof present any tenable ground on which it might be sustained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3406.]

12. NAVIGABLE WATERS—LITTORAL RIGHTS—POSSESSION OF LAND.

Act Cong. May 17, 1884, c. 53, 23 Stat. 24, providing a civil government for Alaska, declares that the Indians or other persons in the district should not be disturbed in the possession of any land actually in their use or occupation or then claimed by them; but that the terms under which such persons might acquire title were reserved for future congressional legislation. *Held* that, the protection of such statute never having been withdrawn, complainant and its grantors having claimed possession and the right to possess all tide lands in front of their property prior and subsequent to such enactment, except so far as they had conceded to the public use of a street and sidewalk along the shore, were entitled to protect such possession of the tide land between the roadway and the line of low tide by appropriate suit or action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 241–244.]

13. EQUITY—ADEQUATE REMEDY AT LAW—WAIVER.

Where, in a suit to enjoin a trespass on tide land, no objection was interposed by demurrer or answer on the ground that complainant had an adequate remedy at law, such objection was waived.

Appeal from the District Court of the United States for the First Division of the District of Alaska.

J. A. Hellenthal and Lorenzo S. B. Sawyer, for appellant.
Lewis P. Shackleford and Geo. W. Towle, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The appeal in this case is taken from an order of the court below granting a temporary injunction upon a bill in equity, the answer thereto, and the testimony and proofs of the

respective parties. The bill was brought to enjoin the appellant from erecting a structure on tide lands in front of property of the appellee, fronting on Gastineaux Channel, an arm of the North Pacific Ocean in Alaska, the appellee alleging that, as a littoral owner of lands abutting the shore of the sea, it was entitled to free access to and from the navigable waters fronting thereon. The appellant in his answer denied that the appellee is a littoral owner on the seashore, and alleged facts to show that by the dedication and grant of a sidewalk and street in front of its land the appellee had parted with all littoral rights. The court below held that the appellee possessed the littoral right of access to the water in front of its land, and on that ground awarded the injunction.

The common law has, by act of Congress, been declared to be in force in the territory of Alaska. By the common law of England, the King was the owner of the bed of the ocean and of everything below the line of ordinary high tide, and the littoral owner held only to the line of ordinary high tide, but he had the right of access to the navigable waters of the ocean in front of his land and of every part thereof. In Gould on Waters, § 149, it is said:

"But a littoral proprietor, like a riparian proprietor, has a right to the water frontage belonging by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purpose of using the right of navigation. It is distinct from the public right of navigation, and an interruption of it is an encroachment upon private right, whether caused by a public nuisance or authorized by the Legislature."

In Shively v. Bowlby, 152 U. S. 9, 14 Sup. Ct. 548, 38 L. Ed. 331, upon an exhaustive consideration of the authorities, it was held that the common law of England is the common law of this country, except where it has been modified by the Constitution, statutes, or usages of the different states, or by the Constitution or laws of the United States. The court said:

"It is equally well settled that a grant from the sovereign of land bounded by the sea or by any navigable tide water does not pass any title below high-water mark, unless either the language of the grant or long usage under it clearly indicates that such was the intention."

After reviewing the English decisions, the Supreme Court continued:

"It has been established in England that the owner of land fronting on a navigable river in which the tide ebbs and flows has a right of access from his land to the river; and may recover compensation for the cutting off of that access by the construction of public works authorized by an act of Parliament." "The right thus recognized, however, is not a title in the soil below high-water mark, nor a right to build thereon, but a right of access only, analogous to that of an abutter upon a highway."

So in Weber v. Harbor Commissioners, 18 Wall. 57–65 (21 L. Ed. 798), it was said:

"By that law, the title to the shore of the sea, and of the arms of the sea, and in the soils under tide waters is in England in the King, and in this country in the state. Any erection thereon, without license, is therefore deemed an encroachment upon the property of the sovereign, or, as it is termed in the language of the law, a purpresture, which he may remove at pleasure, whether it tend to obstruct navigation or otherwise."

There can be no doubt, therefore, that the appellee, while it had not the right to wharf out on the tide lands in front of its property, was, if its land abutted the shore, entitled to free access to the navigable waters at all points in front thereof, and was entitled to an injunction against the erection of any structure on the tide lands, or in the water in front thereof, which would interfere with such access. Gould on Waters, § 547; Lyon v. Fishmongers' Co., 1 App. Cas. 662; Shirley v. Bishop, 67 Cal. 543, 8 Pac. 82; San Francisco Savings Union v. P. G. R. Petroleum, etc., Co., 144 Cal. 134, 77 Pac. 823, 66 L. R. A. 242, 103 Am. St. Rep. 72.

But we do not find that the appellee is in fact a littoral owner and possessed of an individual right, as distinguished from the public right, of access to the navigable waters in front of its land. On March 6, 1881, M. W. Murray located a tract of land 600 feet square, in which is included blocks O, P, and Q, as now marked and designated on the plat of Juneau. The location was partly upon upland and partly upon tide lands, with its waterward boundary at low-water mark on Gastineaux Channel. There was then no civil government in Alaska, and Murray's location was protected and recognized solely by the common consent of the miners of the mining district in which it was made. In the year 1881, Murray built a wharf on the tide lands in front of his location, southerly from the point occupied by the appellant, and from that time until 1896 the wharf was continuously used as the only public dock. During that period, all vessels which carried merchandise and passengers to and from the town of Juneau landed at that dock. During all that period, and up to the present time, the tide land from the dock northward into the town of Juneau and in front of the appellee's land has been continuously used as an open public thoroughfare, and at the same time a strip of five feet in width along the bank above high-water mark in front of blocks O, P, and Q has been in continuous public use as a sidewalk. On September 13, 1893, entry was made of the townsite of Juneau under the provisions of section 2387 of the Revised Statutes (U. S. Comp. St. 1901, p. 1457), and the trustee of the townsite caused a survey of the same to be made in order to fix the exterior boundaries and subdivide the town into lots, blocks, and streets and alleys according to the rules and regulations of the Interior Department. The map so made was forwarded to the Interior Department, and was duly approved and adopted as the official plat of the townsite, and later a patent was issued to the trustee. In the map the strip of land five feet wide was marked and designated as a sidewalk along the entire water front of the town of Juneau. On March 21, 1898, Thomas R. Lyons, who had become the successor of the original townsite trustee, as such trustee, executed a deed to the appellee's grantors, in which, after describing and designating as the conveyed property lots in blocks O, P, and Q, the grantor proceeded to convey by metes and bounds the whole tract 600 feet square, originally located by Murray. By virtue of that deed, the appellee claims title, not only to the land covered by the sidewalk above the high-tide line, but to the tide land in front of blocks O, P, and Q as far as low-water mark. But it is obvious that the grantees

·could take thereby nothing below the high-tide line, for the government had not parted with its title to the tide lands. Notwithstanding this deed, there was no interruption or interference on the part of the appellee or any one with the public use of the sidewalk above high-tide line on the water front of Juneau, and the public use of a plank roadway 20 feet in width immediately below the high-tide line. But on April 3, 1905, the appellee, in consideration of the sum of $374, quitclaimed to the city of Juneau, then a municipal corporation, "a right of way for the maintenance of a public street as now located and occupied on, over, and across the following described strip of land," the description being of a strip 20 feet wide below high-tide line along the entire front of blocks O, P, and Q, and the deed provided for reversion to the grantor of the easement so granted whenever the city should cease to maintain the street.

The appellee denies the power of the trustee, by the map which he filed with the town-site entry, to dedicate to public use the five-foot strip along the front of its blocks, and it is to be conceded that the trustee had no such power. An entry of a town site, under the provisions of section 2387, is made for the several use and benefit of the occupants thereof. On the trustee is imposed a double trust, one for the individual occupants of the town, the other for the occupants collectively as a community. City of Denver v. Kent, 1 Colo. 336; Martin v. Hoff, 7 Ariz. 247, 64 Pac. 443, 448. The legal title is vested in the trustee in his official and public capacity, and, simultaneously with the entry, there is vested in the beneficiaries an absolute right in the trust. Winfield Town Co. v. Maris, 11 Kan. 128, 151; Pascoe v. Green, 18 Colo. 326, 32 Pac. 824. The streets contemplated by the act, and as to which a public right attaches, are those which in fact existed at the time of the entry, either by actual use or by dedication, and the trustee cannot, by any act of his own, dedicate a street. Bingham v. City of Walla Walla, 3 Wash. T. 68, 13 Pac. 408; Alemany v. City of Petaluma, 38 Cal. 553; Pueblo v. Budd, 19 Colo. 579, 36 Pac. 599; Village of Buffalo v. Harling, 50 Minn. 551, 52 N. W. 931. But, at the time when the entry of the town site of Juneau was made, the sidewalk above high-tide line, and the roadway below the same had been in continuous public use for more than 12 years, and over them had passed all traffic and travel to and from the outer world. In conformity with this public use the trustee caused the map to designate the sidewalk as a public walk. This consent and acquiescence in such use on the part of the occupants of the adjacent property would, if they had possessed the title, present strong evidence of a dedication thereof to public use, for a dedication may be without writing, by acts in pais, as well as by deed (13 Cyc. 454, 473, 478; Barclay v. Howell, 6 Pet. 513, 8 L. Ed. 477); and a claimant under the town-site law may, before his right to a deed is established, by his acts make a common-law dedication binding as to him, and such as will operate as an estoppel in pais. Village of Mankato v. Willard, 13 Minn. 13 (Gil. 1) 97 Am. Dec. 208. But whether or not such public use and acquiescence therein prior to the date of the town-site entry estop the appellee to deny dedication, we are of the

opinion that the subsequent acts and acquiescence of the appellee's grantors are sufficient to show dedication. They made no objection to the map of the town site or to the continuous use of the sidewalk thereon designated as such. As late as five years after the date of the entry, they accepted deeds from the trustee in which the property conveyed was described as lots and blocks which abutted upon said sidewalk, in accordance with the map, and in the deeds it was recited that the trustee had entered the land in trust for the several use and benefit of the occupants thereof, according to their respective interests, "and has made survey thereof into lots, blocks, squares, streets, and alleys." The trustee in making the town-site entry acted as well on behalf of the appellee's grantors as on behalf of the other occupants of the town. Said the court in Ashby v. Hall, 119 U. S. 526, 7 Sup. Ct. 308, 30 L. Ed. 469:

"The very notion of land settled upon and occupied as a town site implies the existence of streets, alleys, lots, and blocks; and, for the possession of the lots and their convenient use and enjoyment, there must of necessity be appurtenant to them a right of way over adjacent streets and alleys. The entry of the land carried with it such a right of way."

In Parcher v. Ashby, 5 Mont. 86, 1 Pac. 207, it was said:

"Disposing of the lands covered by a town to the occupants, according to their several rights and interests, could not be done except the streets and alleys then in public use were reserved to the public."

In Jones v. The City of Petaluma, 36 Cal. 230, the court said that the effect of the statute was "to ratify and confirm the use to which the land had been put by cities and towns for the purposes of streets, squares, and alleys, and to permit such use in the future by providing for the sale of lots only. It was a dedication to public use of so much of the public land as had theretofore been appropriated to streets, squares, and alleys."

The road on the tide land in front of the appellee's blocks was not designated as a street on the town-site map. The public right to its use rests on a continuous user for more than 20 years, as well as upon the relinquishment made by the deed of the appellee to the city of Juneau on April 3, 1905, whereby it quitclaimed it to the city an easement for public use as a street in the roadway then "occupied and used" in front of its land, for while the appellee had no title to the tide land it had, as we shall see, a right of possession protected under the act of Congress of May 17, 1884. The deed may properly be adverted to as affording additional evidence of the appellee's intention to release to the public its littoral right of access to the waters of the channel.

The acts of dedication by the appellee and its grantors operated to relinquish to the public, and to merge in the public right, their individual right of access to the open navigable waters in front of their land. In Barclay v. Howell's Lessee, 6 Pet. 498, 512, 8 L. Ed. 477, it is declared that, if a street as laid out is bounded by a navigable river, it is limited on that side only by the public right:

"To contend that between its boundary and the public right a private and hostile right could exist would not only be unreasonable, but against law."

In Potomac Steamboat Co. v. Upper Pot. S. Co., 109 U. S. 672, 683, 3 Sup. Ct. 445, 27 L. Ed. 10.0, the court, quoted with approval from Rowan's Ex'rs v. Portland, 8 B. Mon. (Ky.) 232, as follows:

"The riparian right is the result of that full dominion which every one has over his own land, by which he is authorized to keep all others from coming upon it except upon his own terms;" and from Stockport Water Works Co. v. Potter, 3 Hurl. & Colt. 300, 326, in which Pollock, C. B., said "that the rights which a riparian proprietor has with respect to the water are entirely derived from his possession of land abutting on the river. If he grants away a portion of his land so abutting, then the grantee becomes a riparian proprietor and has similar rights."

And the court proceeded:

"No inference in such a case arises against the riparian right of the grantee, because the land has been granted for a street. On the contrary, as was said in Barney v. Keokuk, 94 U. S. 324–340 (24 L. Ed. 224), 'a street bordering on the river as this did, according to the plan of the town adopted by the decree of partition, must be regarded as intended to be used for the purposes of access to the river and the usual accommodations of navigation in such a connection.'"

In Village of Pewaukee v. Savoy, 103 Wis. 271, 79 N. W. 436, 50 L. R. A. 836, 74 Am. St. Rep. 859, it was held that, if a public street exists so that its boundary line and the waters of a navigable lake meet, the riparian rights incident to the land composing the street belong to the public, and there is no zone of private right between the street and the lake, but the public right is continuous from the street to the waters of the lake. Said the court:

"In such situations the wharfing privileges and other incidents of the shore are appurtenant to the public right in the street, leaving no line of paramount private right between the street and the water."

In Rowan's Ex'rs v. Portland, 8 B. Mon. 232, it was held that, if the street line and the line of a navigable stream coincide, the wharfing privileges are in the public to the exclusion of any private right of that nature in the proprietor on the landward side of the street. Of similar import are Backus v. Detroit, 49 Mich. 110, 13 N. W. 380, 43 Am. Rep. 447; Godfrey v. The City of Alton, 12 Ill. 29, 52 Am. Dec. 476; Turner v. People's Ferry Co. (C. C.) 21 Fed. 90; The Schools v. Risley, 10 Wall. 91, 19 L. Ed. 850; Tome Institute v. Crothers, 87 Md. 569, 583, 40 Atl. 261; Smith v. St. Louis Public Schools, 30 Mo. 290.

The doctrine so affirmed rests upon the theory that the private right of access has been merged in a public right which is inconsistent with its exercise, and, in the application of the doctrine, it is immaterial whether the title to the intervening street is vested in the public or remains in the adjacent owner. Barney v. Keokuk, 94 U. S. 339, 24 L. Ed. 224. In Backus v. Detroit, 49 Mich. 115, 13 N. W. 382 (43 Am. Rep. 447), Judge Cooley said:

"The common law of dedication would be sufficient to estop the owner from setting up any claim, or asserting any right to the prejudice of the easement."

One who has been divested of such littoral rights cannot maintain a suit to enjoin obstruction to his access to navigable waters in front of his land, the case coming within the general rule that.

individuals are not entitled to redress against a public nuisance. Gould on Waters, § 122, and cases there cited.

But notwithstanding that the theory upon which the court below awarded its injunction may have been erroneous, the injunction must not be disturbed if in the pleadings and the proofs we may discover any tenable ground upon which it may be sustained. We find such ground in the fact which is shown by the bill and in the proofs that the appellee's grantors at the date when the act of Congress of May 17, 1884, c. 53, 23 Stat. 24, was enacted, claimed the possession and the right of possession of all the tide lands in front of their property, and have ever since maintained such claim except so far as they have conceded the public use of the street and sidewalk. That act of Congress provided a civil government for Alaska, and, among other things, enacted "that the Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them, but the terms under which said persons may acquire title to said land is reserved for future legislation by Congress." There has been no subsequent legislation affecting the right of possession thus recognized, and the protection thus afforded by the statute has not as yet been withdrawn. The appellee having this right of possession of the tide land between the roadway and the line of low tide could protect such possession by any appropriate suit or action. Conceding that it had an adequate remedy at law against the intrusion of the appellant upon its possession, it nevertheless appears from the record that no objection to the relief sought by the bill was interposed, either by demurrer or answer, on the ground that the appellee had an adequate remedy at law. This being the case, it must be held that such objection is waived, for the case is not one over which equity could have no jurisdiction, since under proper averments trespass may in exceptional cases be enjoined. Where it is competent for a court of equity to grant the relief prayed for, and it has jurisdiction of the subject-matter, the objection that the complainant has an adequate remedy at law must be taken at the earliest opportunity; otherwise, it is waived. Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005; Brown v. Lake Superior Iron Co., 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021.

The order is affirmed.

ROSS, Circuit Judge (concurring). I concur in the judgment on the ground that the case made before the court below, from whose order granting a preliminary injunction this appeal comes, shows that the appellee's grantor took possession of the tide lands in controversy in the year 1881, since which time the appellee and his grantors have held the continuous and exclusive possession until the driving of the piles by the appellant complained of. That possession existing, the court below was right in protecting it by its preliminary injunction. Heckman v. Sutter, 119 Fed. 83, 55 C. C. A. 635; Id., 128 Fed. 393, 63 C. C. A. 135. The present being

an appeal from an order granting a preliminary injunction only, I do not think the merits of the case should be decided in advance of a trial upon the merits in the court below.