CASS COUNTY PARK TRUSTEES *v*. WENDT.

1. JUDGMENT—RES JUDICATA—PARTIES—HIGHWAYS AND STREETS.
   Determination made in suit by property owners against board of county road commissioners that public roadway bordering lake had been established by user, followed by property owners erecting a fence on lake side of road which plaintiffs herein, the county park trustees, and the former defendant sought to have removed, *held*, to have definitely disposed of the main issues involved in instant suit.

2. HIGHWAYS AND STREETS—NAVIGABLE WATERS—BARRIERS.
   The title owner of land subject to public user for highway purposes of a highway contiguously bordering a nonprivate navigable lake may not erect a barrier in such a manner as to interfere with public passage between the highway and lake, where it appears the public authorities have need of the area between the water and the traveled portion of the highway to maintain protection for the highway against the action of the lake.

3. COURTS—PRECEDENTS.
   Former decision of the Supreme Court of this State is not of controlling significance in passing on an appeal where situation to which rules there applied differs materially from the situation here involved.

Appeal from Cass; Mosier (Carl D.), J. Submitted April 7, 1960. (Docket No. 27, Calendar No. 48,459.) Decided September 16, 1960.

Bill by Park Trustees for Cass County and Board of County Road Commissioners for Cass County

REFERENCES FOR POINTS IN HEADNOTES.
[1] 14 Am Jur, Counties § 80.
[2] 25 Am Jur, Highways § 291
[3] 14 Am Jur, Courts § 79.

against Don C. Wendt to compel removal of barbed wire fence separating highway and navigable waters. Decree for plaintiffs. Defendant appeals. Affirmed.

*Jones & Grier,* for plaintiffs.

*Glenn Squiers* (*Williams & Williams,* of counsel), for defendant.

BLACK, J. (*concurring*). Plaintiffs sued to abate a barbed wire fence defendant had constructed for the purpose of preventing public passage—and uses related to such passage—between a county highway and Cass county's Eagle lake.[1] At the point of controversy such highway skirts Eagle lake for a considerable distance. For a corresponding distance—at the same point—the highway separates defendant's property from the lake. It seemingly is agreed (see *Croucher* v. *Wooster,* 271 Mich 337) that defendant holds legal title to the entire highway subject to the public right. On that basis defendant claimed and now claims the right to maintain the fence between the respective rights of highway use and navigational-recreational use.

The highway is of black-top construction. At one time it was the principal thoroughfare between Cassopolis and Elkhart. Like *Croucher* (and unlike presently considered *Meridian*), there is at the point of controversy no land between the highway and the "somewhat deep" waters of the lake. The result, fully shown by testimony and finding, is that the ordinary public right of use of such highway[2] has,

---

[1.] The fence, 4 strands high supported by steel posts, extended some 1,600 to 1,800 feet along the waterside highway. Part of it was in the water of the lake and part of it, according to a witness, was on the berm of the highway. The fence was taken down, pending trial below, by order of the court.

[2] For definitional consideration of such right, see *Macomber* v. *Nichols,* 34 Mich 212 (22 Am Rep 522), followed in *Grand Rapids, G. H. & M. R. Co.* v. *Stevens,* 219 Mich 332, 336, 337.

for many years opposite defendant's property, been joined in fact with the corresponding public right of use of the waters of the lake. Whether such public rights have been joined together in law, and so may be enjoyed generally without interposition of defendant's fence, is the question before us.

The chancellor, relying principally on a previous adjudicatory suit and the unappealed decree entered therein, ruled in favor of the public authorities and entered a decree restraining defendant as recited in the margin.[3] From such decree defendant appeals and presents this question:

"Where a public highway has been established by user along and to the edge of a nonprivate lake, does the fee owner of the right-of-way have the right to erect a fence along the water's edge of the highway right-of-way?"

The previous suit was brought by defendant Wendt and his wife Patricia, as plaintiffs, against the Cass county board of road commissioners. By such suit Mr. and Mrs. Wendt sought injunctive relief, and a money decree, alleging that the road commission had no right to bolster and "build up" the highway along the waterside—by means of stone fill and the like—and was in fact "trespassing" on their land by such activity. That suit resulted in a decree adjudging "that the public has acquired an easement by user for highway purposes across any lands of the plaintiffs which lie 33 feet easterly [the waterside]

___

[3] "Ordered, adjudged and decreed that the defendant be, and is hereby, restrained from building, erecting or maintaining any fence or similar obstruction between the Eagle lake road in Ontwa township in said county, and the waters of Eagle lake, along that portion of said highway that extends to the shore of said lake as heretofore adjudged and decreed by this court, and further restrained from maintaining any similar obstruction in the waters of said lake or upon said highway that will interfere with the use of said highway, beach and lake by members of the public, along the aforesaid portion of Eagle lake road where the same extends to the shore of said Eagle lake."

of the following described line and westerly thereof to the shore of Eagle lake (here follows the appropriate legal description)."

Thereafter, such decree having become final, Mr. Wendt constructed the mentioned fence. This suit, presenting its afore-stated question, followed.

To sustain his affirmative answer to such question defendant relies particularly on *Meridian Township* v. *Palmer,* 279 Mich 586. There, however, the contentions of the public authorities were statedly limited, and there was no earlier adjudication of a pertinent public right. A decisive factor, apparently, was the failure of Meridian township to adduce (p 590) "testimony showing any interest in the public beyond an easement of passage over the 66-foot strip, constituting the road." Yet I would not evade due —and possibly overdue—re-examination of *Meridian.* The naked dixit of *Meridian*—that *Backus* v. *City of Detroit,* 49 Mich 110 (43 Am Rep 447), does not apply where a highway skirts rather than ends at navigable water—has bred more disputatious litigation than it has settled. This is well known to veteran circuit judges of such counties of Michigan as are blessed with a plenitude of navigable lakes and waterways.

The situation made by *Meridian* is especially difficult for public authorities charged with the duty of maintenance and protection—from erosion—of such water-contiguous public ways. Further, as the demand grows for private frontage on navigable waters, more and more of that which *Backus* once prevented takes place at the expense of the public right.

*Backus*—surely a leading presentation of Michigan's "Big Four"—did not reason to its decree on any supposed theory that the law therein expounded is or should be different when the public way borders

and follows the water's edge.[4]   And it requires no torrent of words to demonstrate that *Backus* was broadly designed as a guide for all like cases where public ways actually end in or contiguously border the waters of navigable lakes and watercourses. The principal authority relied on by Mr. Justice COOLEY (writer of *Backus*) actually was an instance of dispute involving a waterfront street, in Pittsburgh, which extended along rather than terminated in the river Monongahela (*Barclay* v. *Howell's Lessee,* 31 US 498 [6 Pet 498, 8 L ed 477]). What was said in *Barclay* became, by adoption in *Backus,* good Michigan law. I would adopt again, and apply as presently decisive, the reasoning of *Barclay* as follows (p 512):

"It is admitted by both parties, that the river Monongahela, being a navigable stream, belongs to the public; and a free use of it may be rightfully claimed by the public, whatever may be the extent of its volume of water. If Water street be bounded by the river on the south, it is only limited by the public right. To contend that between this boundary and the public right, a private and hostile right could exist, would not only be unreasonable, but against law."

Having adopted the rule of *Barclay* the Court—in *Backus* (p 118)—went on to quote from a New Jersey case as follows:

"If the shore is extended into the water by alluvial deposits, or is filled in by the proprietor of

---

[4] In *Meridian* the Court held *Backus* inapplicable, without explanation or reference to supporting authority, by this curious statement (pp 590, 591): "It is clear, however, that cases involving a street which *terminates* upon a navigable body of water are beside the mark when applied to the instant case" (one of a highway bordering a navigable lake). Why such cases "are beside the mark" was left to professional conjecture. For my part, I perceive no reason for holding such cases "beside the mark" as the public water frontage, even of this much-blessed State, grows unto visible scarcity as the public need for such frontage develops apace.

the soil, the public easement is, by operation of law, extended from its former terminus over the new-made land to the water."

*Meridian* should be overruled, and *Backus* should be reinstated for general application where it is shown that a street or highway actually and in the natural state of things contiguously borders or ends in navigable public waters. Thus should respective and well understood public rights be joined, one and inseparable.

The plaintiff authorities, representing Cass county, have over the years at public expense provided along Eagle lake "the means of access from the highway by land to the highway by water" (*Backus*, p 120). No law—and certainly no rule of equity in this case of a physically barbed answer to an earlier decree—commands that such highways be separated. As Judge Mosier found, in the first of these cases:

"The testimony is clearly persuasive that the public has used all of the land between the main traveled portion of the highway and the lake, and it is also clear that the public authorities need that area for the purpose of building and maintaining protection for the highway against the action of the lake."

I would affirm, with costs to plaintiffs.

Carr, J. The controversy from which this suit in equity has resulted involves a public highway along the east shore of Eagle lake in Cass county. In 1955 defendant Wendt and his wife brought suit against the board of county road commissioners of said county claiming that they were the owners of land abutting Eagle lake over which the public right-of-way existed, and that the defendant board had trespassed on their property, causing injury thereto. They sought damages and also injunctive relief The defendant denied any wrongful conduct on its

part, contending that plaintiffs' property had always been subject to a 66-foot easement for public purposes, that it had been necessary to improve said thoroughfare from time to time and to widen it in order to render it safe for traffic purposes, and that much work had been necessary in order to prevent erosion on the westerly side of the highway.

The circuit judge before whom the case was tried concluded that the roadway as it actually existed at the time had been established by user, and that the primary question at issue was the extent of the public use. On the basis of the proofs it was determined that a strip of land between the highway and the water's edge had been used for various public purposes including the launching of boats, swimming, fishing, and the parking of automobiles, and that such use had been a constant one. The claim of plaintiffs Wendt that they had riparian rights in the land adjacent to Eagle lake and that the strip in question was not a part of the public way was rejected. It was, in consequence, determined, as set forth in the court's opinion on file, that the defendant board had not been guilty of trespass, that plaintiffs' property had not been damaged, and that they were not entitled to the injunctive relief sought.

A decree was entered on January 31, 1957, in accordance with the opinion filed, it being expressly set forth therein, among other matters, that the public had acquired an easement by user for highway purposes across any lands of the plaintiffs lying 33 feet easterly of a described line and westerly of said line to the shore of Eagle lake. It was, in other words, expressly adjudged that the highway as actually established by user extended to the shore of the lake. From such decree no appeal was taken. It appears, however, that Mr. Wendt erected a fence along and in the westerly side of the road, consisting

of barbed wire attached to metal posts, some of which were located on the beach and others placed 5 or 6 feet therefrom in the water.

Plaintiffs brought the instant suit to enjoin the maintenance of the fence in question, and to prevent defendant from maintaining any obstruction that would interfere with the public access from the highway to the lake. It was plaintiffs' position in the trial court that any obstruction that interfered with the rights of the general public to the use of the highway in question, as described in the prior suit, or the use of the waters of the lake, was and would be wrongful, and that equity should forbid it on that basis. It was alleged in plaintiffs' bill of complaint that Eagle lake was navigable, and such allegation was admitted by the answer. Following a hearing of the cause the trial court found in favor of the plaintiffs, pointing out that the decree in the suit brought by Mr. and Mrs. Wendt in 1955 had adjudicated the interests of the parties in the highway and the strip lying between the traveled portion thereof and the shore of the lake, and that, in consequence, the matter at issue was whether the fence erected by defendant Wendt interfered with the enjoyment of public rights. A decree was entered in accordance with the opinion of the court granting the relief sought, and defendant has appealed.

That the decree entered in the prior suit on January 31, 1957, from which no appeal was taken, definitely disposed of the main issues involved in the controversy between the parties is not open to question. Our examination of the testimony in the record now before us leads to the conclusion that the circuit judge was right in holding that defendant was not entitled to maintain the fence that he had erected, that it constituted a wrongful interference with the rights of the public, established by user, in the highway, and with the right of access to the waters of

the lake and the use and enjoyment thereof, as previously adjudged.   We concur in the affirmance of said decree.

In support of its claims as to the rights of defendant and appellant, counsel have called attention to *Meridian Township* v. *Palmer,* 279 Mich 586.   As appears from the opinion of this Court, the facts in that case are not analogous to those presented in the instant litigation.   The public thoroughfare there involved was, as pointed out in the opinion of this Court, 66 feet in width.   It was established with reference to a definitely fixed center line extending, in part, along the north side of Lake Lansing, in Ingham county.   The proofs established no public interest other than an easement over the roadway as laid out.   At the time the case arose there was a strip of land between the edge of the lake and the south line of the highway that was approximately 20 to 25 feet in width.   The evidence indicated that such strip had been created by the recession of the water line, by filling in to protect the highway, and by the improvement of the strip by the defendants to prepare it for use as a bathing beach.

Defendants had fenced in a section of said beach. Plaintiff township brought suit for an injunction to require defendants to remove the fence and to permit free access across the strip mentioned from the road which, it will be noted, was not contiguous to the shore of the lake.   Applying the rule relating to riparian rights as recognized and declared in *Hilt* v. *Weber,* 252 Mich 198 (71 ALR 1238), it was held that the township was not entitled to the injunctive relief sought for the reason that defendants were exercising rights to which they were entitled in view of the facts shown.   Such decision, set forth in a unanimous opinion of the Court, was correct, but because of the situation presented in the record in

the case it is without controlling significance in passing on the appeal now before us.

The holding in the *Meridian Township Case* is not at variance with the prior decision in *Backus* v. *City of Detroit,* 49 Mich 110 (43 Am Rep 447). There certain property south of Fort street in the city of Detroit was platted, some of the lots fronting on the Detroit river. Between 2 of said lots there was a street 30 feet in width. Plaintiff owned 6 of such lots and had built a wharf extending into the river in front of 3 of them. He had excavated at the end of the street referred to for a slip to be used in connection with said wharf and another wharf in front of the lot on the opposite side of said street extended. The city of Detroit desired to construct for the public use a wharf at the end of the street, claiming that the way dedicated did not extend merely to the bank of the river but to and over the waters of the river to the channel bank, or as far toward said point as should be found desirable for the benefit of the people of the city.

Relying on a provision of the municipal charter granting the right to construct wharves the city let a contract for the doing of the work, whereupon plaintiff brought injunction proceedings. It was held, in accordance with the defendant city's claim, that the dedication on the plat to the shoreline did not restrict the public use to such line, and that it should be construed with like effect as would be a grant to an individual. The injunctive relief sought was denied, and the bill of complaint dismissed. It will be noted that the decision was based on the conclusion of the Court as to the scope of the dedication of the street as shown on the plat, and in support of its conclusion the Court cited decisions from other States and also decisions of the Federal supreme court. A consideration of the factual situations involved clearly indicates that the holding in *Meridian*

*Township* v. *Palmer* was not in any way at variance with the decision in *Backus* v. *City of Detroit*. The appeal now before us must be determined on the basis of the facts, and the decree of the circuit court is not inconsistent in any respect with either decision cited.

Dethmers, C. J., and Kelly, Smith, Edwards, Kavanagh, and Souris, JJ., concurred with Carr, J.