WORTHEN LUMBER MILLS v. ALASKA JUNEAU GOLD MINING CO.*

(Circuit Court of Appeals, Ninth Circuit. February 7, 1916. Rehearing Denied March 6, 1916.)

No. 2640.

1. MINES AND MINERALS ☞27—LODE LOCATION—ESTOPPEL.

Where one claiming land under mining lode locations purchased mill site locations located by others upon the same land, it was not thereby estopped to claim under the mining lode locations.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 64, 65; Dec. Dig. ☞27.]

2. MINES AND MINERALS ☞27—ENTRY—MISREPRESENTATIONS.

Where plaintiff, who claimed land under mining lode locations, purchased mill site locations located by others upon the same land, the representations of the mill site locators in entering the land that it was nonmineral could not be imputed to plaintiff, unless plaintiff procured such locations to be made.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 64, 65; Dec. Dig. ☞27.]

3. INDIANS ☞15—POSSESSORY RIGHTS—CONVEYANCES—STATUTORY PROVISIONS.

Act May 17, 1884, c. 53, § 8, 23 Stat. 26, providing, relative to public lands in Alaska, that Indians or other persons in the district of Alaska should not be disturbed in the possession of any land actually in their use or occupation or claimed by them, but that the terms under which such persons might acquire title to such lands were reserved for future legislation, did not prevent Indians in possession of land at the time of the passage thereof from transferring their possessory rights.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ☞15.]

4. INDIANS ☞15—POSSESSORY RIGHTS—CONVEYANCES—STATUTORY PROVISIONS.

Act May 17, 1906, c. 2469, 34 Stat. 197 (Comp. St. 1913, § 5096), authorizing the Secretary of the Interior to allot not to exceed 160 acres of nonmineral land in Alaska to any Indian or Eskimo, and providing that the land so allotted shall be deemed the homestead of the allottee and his heirs in perpetuity, and shall be inalienable, did not of its own force terminate Indian rights of occupation of land, or place any bar upon the alienation of their possessory rights.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ☞15.]

5. NAVIGABLE WATERS ☞39—LITTORAL RIGHTS—LOSS.

The laying out of a street by a municipal corporation on tidelands on the shore of a navigable channel in front of plaintiff's upland, without securing any right so to do from plaintiff, or obtaining such right by

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Second petition for rehearing denied May 8, 1916.

condemnation proceedings, did not sever plaintiff's littoral rights from the upland, or merge them in the public right.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 112, 117, 127, 239–244;  Dec. Dig. ⊚═══39.]

6. PUBLIC LANDS ⊚═══47—STATUTORY PROVISIONS—RESERVATIONS.

Act May 14, 1898, c. 299, § 10, 30 Stat. 413 (Comp. St. 1913, § 5091), authorizes citizens or corporations, possessing and occupying public lands in Alaska for the purposes of trade, manufacturing, or other productive industry, to purchase one claim of not exceeding 80 acres, provided, no entry shall be allowed thereunder on land abutting on navigable waters of more than 80 rods, and provided, further, that there shall be reserved by the United States a space of 80 rods between tracts sold or entered thereunder abutting on any navigable water, and that the Secretary of the Interior may grant the use of such reserved lands abutting on the water front to any citizen, association, or corporation for landings and wharves, with the provision that the public shall have access to and proper use thereof, and that a roadway 60 feet in width parallel to the shore line shall be reserved for the use of the public as a highway. *Held*, that this did not have the effect of reserving a roadway 60 feet wide across mill site locations abutting on a navigable channel.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 133, 137; Dec. Dig. ⊚═══47.]

7. NAVIGABLE WATERS ⊚═══39—LITTORAL RIGHTS—ENJOINING INTERFERENCE.

Where the owner of upland fronting on a navigable channel had a right of access over tidelands in front of such upland to the navigable waters of the channel, and the District Court found that to avail itself of this right of access it was necessary to construct a wharf covering the whole space in front of the upland, and that all of such area was reasonable and necessary to be used in aid of its ingress and egress to and from such upland, a decree enjoining another party from constructing, continuing, or maintaining on such tidelands any structure of any nature or description in any way cutting off, obstructing, or interfering with such free and uninterrupted access and the building of such wharf, did not grant the owner of the upland a greater or more extensive right than was reasonable under the circumstances.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 112, 117, 127, 239–244;  Dec. Dig. ⊚═══39.]

Appeal from the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

Suit by the Alaska Juneau Gold Mining Company against the Worthen Lumber Mills. Decree for plaintiff, and defendant appeals. Affirmed.

The appellant and its predecessors in interest had for 13 years been operating a sawmill on the shores of Gastineau Channel at Juneau, and had established booming grounds for logs along the beach. It had built platforms over tidewaters on the seaward side, and adjoining the city street known as Franklin street, for use as lumber yards. It had driven piles on the tide flats, and was placing a platform thereon, when the appellee brought suit to enjoin it from further maintaining the platform, and to establish the right of the appellee to the use and possession of the premises so occupied by the appellant. The appellee alleged three sources of title: First, two mining claims, the General Grant lode location and the Abraham Lincoln lode location; second, two mill site locations; and, third, the grant of the right of occupation of certain Indians, who, prior to May 17, 1884, were in possession of the upland above the tidelands in question. The court below found that the appellee was the owner of the lode mining claims, the owner of the mill sites, and the grantee of the Indians' right of occupation; that the appellee is building

⊚═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a large milling plant upon the premises embraced within the lode claims and the mill sites and the tracts so purchased from the Indians, and that in order to carry out its work of construction it is necessary that the appellee have access to the deep waters of Gastineau Channel, and that wharves be built from the upland to said deep water for the purpose of facilitating such access, and enabling it to land its construction material, and convey the same to the point where the milling plant is being constructed, and for other purposes; and the court found that the plank road constructed in 1912 by the city of Juneau over the tideland lying in front of the said upland, and which the appellant alleged operated to sever littoral rights from the upland, was constructed without the appellee's consent, and that it does not interfere with any of the appellee's rights, but that it is so constructed that the appellee can wharf out and have access to deep water notwithstanding said roadway. And the court ruled, as a conclusion of law, that the appellee is the owner of the uplands and entitled to all the littoral rights attached to uplands abutting on a navigable highway, including the right to construct a wharf, and the court enjoined the appellant from constructing and continuing or maintaining on the tidelands in question any structure of any nature or description which in any way cuts off or obstructs or interferes with such free and uninterrupted access and the building of the appellee's wharf. From that injunction order the present appeal is taken.

John Rustgard, of Juneau, Alaska, for appellant.
Hellenthal & Hellenthal, of Juneau, Alaska (Curtis H. Lindley, of San Francisco, Cal., of counsel), for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1-4] The appellant contends that upon the established facts in the case the court below erroneously reached the legal conclusion that the appellee had established its title or right to the possession of the upland. It is argued that by entering the mill sites the appellant waived its right under the mining lode claims, that by presenting affidavits that the land was nonmineral in order to enter the land as mill sites the appellee became estopped to claim the same under the mineral lode locations, and that by proving the right of possession of certain Indians in and to the upland prior to the act of Congress of 1884, and continuously thereafter until 1913, when the appellee received conveyances from them, the appellee has proved that the land was not open to location as mining claims or mill sites, and that no right of possession could be acquired under either thereof. The appellant, admitting that the right of possession was in the Indians as was found by the court below, contends that the Indian right of occupation was not transferable and never became vested in the appellee.

We do not think it is necessary to determine by which of the three sources of title pleaded in the complaint the appellee acquired possession of the upland. We do not agree with the appellant that by acquiring the mill sites the appellee became estopped to claim under the mining lode locations. We find no ground of estoppel in the mere fact that the appellee, while claiming under mining lode locations, purchased mill site locations located by others upon the same land. The representations which the mill site locators had made to the effect that the land was nonmineral could not be imputed to the appellee, unless it were shown, which it is not, that the appellee had procured such locations to be made. We are of the opinion, also, that

the right of the Indians was transferable. This court recognized that right in Heckman v. Sutter, 119 Fed. 83, 55 C. C. A. 635. The act of Congress of 1884 provided in section 8:

"That the Indians or other persons in the said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them but the terms under which such persons may acquire title to such lands is reserved for future legislation by Congress."

We do not think that it was the purpose of this act merely to protect the possession of the Indians of lands which they then occupied in Alaska, and to deny them the power to convey to others their right of occupation. It was an act, not only for the benefit of the Indians, but also for the white settlers. It was enacted with a view to conditions which then existed in Alaska. Since the time of its acquisition, settlers and miners had been entering the territory. They had located mining claims and town sites, and had transferred lands in tracts and in lots and blocks. They had erected buildings for mercantile purposes and dwelling purposes. The mining claims and lands so occupied by Indians and settlers were held under a claim of possession only, and such possessory rights had been freely conveyed and transferred. Those possessory rights as they then existed were recognized and protected by the act. The act made no distinction between the rights of the white settlers and the rights of the Indians, and it is not to be presumed that Congress intended thereby to deprive either of the power to exercise rights which they had theretofore possessed.

We find nothing to the contrary in Russian-American Co. v. United States, 199 U. S. 570, 26 Sup. Ct. 157, 50 L. Ed. 314, in which Mr. Justice Brown said of section 8 of the act:

"It is quite clear that this section simply recognized the rights of such Indians or other persons as were in possession of lands at the time of the passage of the act, and reserved to them the power to acquire title thereto after future legislation had been enacted by Congress."

Nor does the Act of May 17, 1906 (34 Stat. 197), authorizing the Secretary of the Interior in his discretion to allot nonmineral land to any Indian or Eskimo as a homestead for the allottee and his heirs in perpetuity, which "shall be inalienable and nontaxable until otherwise provided by Congress," of its own force terminate the rights of occupation which the Indian had prior thereto, or place any bar upon the alienation thereof.

[5] The appellant invokes the doctrine of McCloskey v. Pacific Coast Co., 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673, in which this court held that the plaintiff therein had, by dedication of a street and by deed, parted with all its littoral rights, and it contends that the appellee's littoral rights are cut off by a public street 20 feet wide, known as Franklin street, which extends along the line of mean high tide on the shore of Gastineau Channel in front of the appellee's upland. The evidence is that in the year 1912 the city council of Juneau caused surveys to be made for a street along the beach between the appellee's upland and the waters of the channel, and between high and low water mark, which was made a plank road

placed upon piling, and has become one of the principal streets of Juneau.

The cases cited in support of the decision in the McCloskey Case are to the effect that a littoral proprietor may be deprived of littoral rights by his own act in dedicating a street to the public use, or by a conveyance; also that upland purchased after a public street has been laid out between the same and navigable water is taken severed from all littoral rights. The principle of those decisions does not apply to a case where, as here, the facts go no farther than to show that a municipal corporation has laid out a street on tide lands in front of the upland, and has used it for two or three years without having secured from the upland proprietor any right so to do, or obtained that right by condemnation proceedings. In such a case there is no ground on which it can be said that the right of the littoral proprietor has become merged in a public right. As alleged in the complaint, and as found by the court below, Franklin street interposes in fact no obstacle to the appellee's access to the waters of Gastineau Channel, and we hold that it interposes no obstacle in law.

[6] The appellant contends that by virtue of the mill site locations there was reserved between the land so located and the Gastineau Channel a roadway 60 feet in width under section 10 of the Act of May 14, 1898 (30 Stat. 409). The contention is contrary to the decision of this court in Dalton v. Hazelet, 182 Fed. 561, 105 C. C. A. 99. We are not convinced that that case was erroneously decided.

[7] The court below found that the appellee had need of access to the navigable waters of Gastineau Channel in connection with its mining plant on the upland, and that to avail itself of this right of access it was necessary to construct a wharf covering the whole space in front of said upland, or from the appellant's southerly line to the present Alaska-Juneau wharf, and that all of said area is reasonable and necessary to be used in aid of the appellee's ingress and egress to and from such upland. The appellee having, as we have found, the right of access to the navigable waters of the channel, we are not convinced that the court below has by its decree accorded to it a greater or more extensive right than is reasonable under the circumstances.

The order is affirmed.