PACIFIC COAST CO. v. JAMES et al.

(Circuit Court of Appeals, Ninth Circuit. July 10, 1916.)

No. 2596.

1. DEDICATION ⨀50—LITTORAL RIGHTS—MERGER OF INDIVIDUAL RIGHT WITH PUBLIC RIGHT.

Where the owners of land abutting the sea dedicate for street purposes a strip of land fronting on the sea, their right as littoral owners of access to the navigable waters in front of such land is merged in the public right, and injunction cannot issue to prevent interference with such right by the building of structures on the tidelands.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 91–94; Dec. Dig. ⨀50.]

2. NAVIGABLE WATERS ⨀36(4)—LITTORAL RIGHTS—POSSESSION OF LANDS.

Under Act Cong. May 17, 1884, c. 53, § 8, 23 St. 26, declaring that Indians or other persons in the district of Alaska shall not be disturbed in the possession of any lands actually in their use or occupation or then claimed by them. *Held* that, where complainant, holding tidelands under such statute, had abandoned them, and that defendants had openly appropriated, used, improved, and held possession of such land as vacant, unused, unoccupied, and unappropriated land of the United States for more than 12 years before the commencement of the suit, defendants were entitled to the use and possession of such land as against complainant.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 188–193; Dec. Dig. ⨀36(4).]

3. NAVIGABLE WATERS ⨀36(7)—TIDELANDS—POSSESSION.

Evidence *held* sufficient to support a finding that defendants for more that 12 years had been in the open, notorious, and continuous possession of certain tidelands claimed by plaintiff under Act Cong. May 17, 1884, and that defendants were entitled to the possession of the same as against complainant.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 199; Dec. Dig. ⨀36(7).]

4. NAVIGABLE WATERS ⨀36(4)—POSSESSION—EVIDENCE.

Since the title to all tidelands in Alaska is in the United States, evidence that plaintiff paid taxes upon a wharf-site tract *held* insufficient to show complainant's right to the possession of tide land as against defend-

⨀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ants' claim of open, notorious, and continuous possession for more than 12 years.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 188–193; Dec. Dig. ☾⟳36(4).]

Appeal from the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

Suit by the Pacific Coast Company, a corporation, against George E. James and another. Judgment for defendant James, and plaintiff appeals. Affirmed.

Shackleford & Bayless, of Juneau, Alaska (Farrell, Kane & Stratton, of Seattle, Wash., of counsel), for appellant.

Gunnison & Robertson and Royal A. Gunnison, all of Juneau, Alaska, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This suit was brought by the appellant against the appellee James and one Webster to enjoin the driving by them of certain piles on the southerly portion of a certain piece of tideland 113 feet in width, at Juneau, Alaska, of which the complainant claimed to be the owner as against them—alleging that since March 6, 1881, it had been in the open, notorious, and continuous possession of a certain described tract, including the tideland in question, exercising dominion over the same and over the right of way out to deep water, and also basing its alleged rights on the averment that, as a littoral owner of lands abutting the shore of the sea, it was entitled to free access to and from the navigable waters fronting thereon.

Denying the allegations of the bill in that behalf, and alleging his own ownership of the premises as against the complainant, the defendant James sought by cross-bill an injunction preventing it from driving similar piles, which it was alleged to be threatening and commencing to do. The trial resulted in a judgment for the appellee James.

[1] In respect to the complainant's ownership of upland abutting the seashore and its alleged consequent littoral rights, the decision of this court in the case of McCloskey v. Pacific Coast Co., 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673, is conclusive against the appellant, for the reasons there stated, based upon facts there as well as here appearing. See 160 Fed. pages 797–799, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673.

[2] Respecting the contention of the appellant, based upon its alleged actual and continuous possession of, and claim to, the land in dispute, which rests upon that provision of Act Cong. May 17, 1884, c. 53, § 8, 23 Stat. 24, 26, declaring "that the Indians or other persons in said district [of Alaska] shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them," the trial court held, and, in effect, found as a fact from the evidence in the case, that the piece of tideland in controversy was more than 12 years before the commencement of the suit abandoned by the appellant, and was "vacant, unused, unoccupied, unappropriated land of the United States" at the time the appellee entered into its

possession in April, 1900, since which time, according to the findings, he has been in the actual and undisputed possession and use of it. It is manifest that, unless we can properly hold the finding contrary to the evidence, the act of Congress referred to affords the appellant no basis for its suit.

[3] Prior to the establishment of a civil government for Alaska, which was done by the above-mentioned act of Congress of May 17, 1884, what is now the town of Juneau was known as Rockwell, at which was a settlement of miners and others attracted there by the discovery of gold in the vicinity, and there was recorded, according to the evidence, in the records of the district, by one W. W. Murry, this notice:

"Notice is hereby given that the undersigned, W. W. Murry, hereby claims for building and wharf purposes the following described plot of land lying about one-eighth of a mile easterly from the town of Harrisburg on the seashore: The center line is marked by a blazed tree and notice and large boulder near low-water mark in line S. 25° W. magnetic. The courses and distances are as follows: Commencing at stake and mound of stone, first, N. 25° E. (600) six hundred feet; thence, second, S. 65° E. (600) six hundred feet; thence, third, S. 25° W. (600) six hundred feet, to stake and mound of stone at low-water mark; and thence, fourth, N. 65", W. 600 feet along the water line to place of beginning.

"Located March 6, 1881.                                                        W. W. Murry.
"Witnesses:
        "F. Lagliabue.
        "N. G. Hilton.
"Harris Mining District, Takou, Alaska Territory, March 12, 1881.
                                                                "R. Dixon, Recorder.
"March 12, 1881."

On the 26th of the same month, at a meeting of the miners, there was adopted the following preamble and resolution:

"Whereas, Captain M. W. Murray has located outside and to the east of the city a wharf site and proposes at earliest opportunity to build a wharf and warehouse for the accommodation of vessels and steamers and for the benefit of all citizens alike, it is the sense of the meeting that we should encourage such an enterprise: Therefore it is hereby resolved that the miners and citizens of the district and city, recognizing that such improvements would be a public benefit, hereby accept, indorse, and recognize the rights of said Capt. Murray, and will by our future acts indorse and recognize his rights to the said wharf site and improvements."

The larger part of the land embraced by that location was above high-water mark, but some of it was tideland. It is not claimed that there was then any law in existence authorizing Murry's location, nor is there any very satisfactory showing as to just what he did in pursuance of it; but it would seem from the evidence that he and one Carroll constructed a wharf on the property so located about 40 by 60 feet in dimensions and in the shape of the letter T, on which were built a coalhouse and a warehouse, and that two piles were driven, one of which was on the southerly boundary of the tideland, to which vessels could be and were tied. The wharf became known as the Carroll-Murry wharf, and until 1894 was the only one at Juneau, at which all vessels arriving there landed—tying to the piles when necessary. Whether Murry and Carroll built the wharf and its appurtenances and drove the piles, or whether a part of that work was

done by the appellant company, it is quite certain from the evidence that the appellant in the year 1882, being then engaged in the transportation business between Seattle and Alaska ports, entered into possession of the wharf site under claim of right, and subsequently acquired by mesne conveyances whatever rights Murry and Carroll had therein.

As the evidence shows that the wharf was commenced in 1881 and was completed in 1882, the fair inference is that it was at least commenced by Murry, or Murry and Carroll, and may have been completed by them. At all events, it does appear that in 1882 the appellant took possession of the property under claim of right and used it in the operation of its steamers from that time to and including the year 1894. The appellant's steamers being much too long for the face of the dock, it was necessary, at least in rough weather, to tie them while lying there either to the piles mentioned or to other fastenings on shore. Such, the evidence shows, was the practice of the appellant company until it ceased to use the wharf site in question in the operation of its ships. In 1892 it built in the town of Juneau another wharf, and after that year landed all of its vessels at the new wharf, with the exception that in 1895 it docked one of its steamers at the old wharf, which was thereafter never again used for shipping purposes. The evidence shows that the buildings upon the structure situated near the upland were subsequently at times rented by the appellant for a sardine factory, a tannery and glove factory, and a tenement house, but that nothing was ever done after 1894 towards the maintenance or use of the wharf or tideland for shipping purposes.

The evidence shows that in 1900 the appellee was engaged in the sawmill business at a place on Gastineau Channel, about four miles from Juneau, and in April of that year took a raft of his lumber to that town, and, finding the piece of tideland here in controversy unoccupied, but covered with logs, driftwood, and boulders, proceeded to clear and make of it a place for his rafts and lumber. The piece of tideland so appropriated by the appellee was a strip 113 feet wide on the southerly side of the tract known as the Murry-Carroll wharf site. The evidence shows that from that time until the commencement of this suit—a period of more than 12 years—the appellees openly appropriated, used, improved, and held possession of this piece of land as a landing place for his lumber for his Juneau trade, to which no objection appears to have been made by the appellant, whose Juneau agents well knew the facts. The evidence shows that the appellee's rafts and scows were beached there regularly in the summer time, and that in the winter his craft were laid up there; that in 1904 he drove some piles in the land for the purpose of tying scows to them, and in 1905 he built a gridiron 18 or 20 feet long in bents 4 piles wide. It is true that in the same year of 1905 one Davidson built a similar gridiron on the same piece of land, acting in so doing under and by virtue of a lease from the appellant; but that lease, which was introduced in evidence, shows upon its face that the right undertaken to be thereby exercised was by virtue of the appellant's ownership of its upland and in pursuance of its supposed littoral rights. The lease,

to which the appellant was party of the first part, and Davidson, as receiver of a certain partnership, was party of the second part, recites and provides, among other things, as follows:

"Whereas, under the permission and license of the party of the first part, the party of the second part has erected a platform and pilings upon tidelands in front of lots 1 and 2 in block T of the town site of Juneau, Alaska; and

"Whereas, the said party of the first part is the owner of the upland upon which said tidelands abut and is entitled to littoral rights thereto:

"Now, therefore, the party of the first part, for and in consideration of the sum of one dollar in hand paid by the party of the second part to the party of the first part, receipt whereof is hereby acknowledged, and the covenants hereinafter expressed, hereby leases to the said Charles E. Davidson, as receiver of the partnership estate of E. O. Sylvester and Thomas A. Willson, deceased, the ground now occupied by that certain piling and platform in front of the lots hereinbefore described for the term of six (6) months from date hereof."

The evidence shows that the platform so erected by Davidson collapsed, was rebuilt, was then wrecked by the high tides, and such timber as remained hauled away by the Perseverance Mining Company. In 1906 appellee's gridiron was the only one upon the tract in controversy, and during that year he built a new and more substantial one, using in doing so a part of the old. In the fall of the same year the town of Juneau extended Franklin street of the town past the tract in controversy, whereupon the appellee built an approach from that street down to the westerly side of his gridiron, and has ever since continued to occupy and use the tract in the ways above indicated.

[4] The evidence further shows that the appellant has regularly paid to the town of Juneau the taxes levied upon its wharf-site tract; but, as the title to all tideland in Alaska is in the United States, it is manifest that there could have been no taxes upon the tideland in question. The only other item of evidence we find in the record tending to support the appellant's claim is the circumstance shown that in the year 1900 one Messerschmidt asked permission of the agent of the appellant company to put cordwood on the beach, which was granted; that witness, however, testifying that the place where the wood was to be put was "on dry land, practically," which would, of course, be above high tide.

Taking the record as a whole, we are unable to say that the findings of fact made by the trial court were against the evidence.

The judgment is affirmed.