ARNESS et al. v. PETERSBURG PACKING CO. et al.

(Circuit Court of Appeals, Ninth Circuit. July 7, 1919. Rehearing Denied October 14, 1919.)

No. 3278.

1. EJECTMENT ⬥⟹12—PAPER TITLE TO SUPPORT ACTION—ALASKA STATUTES.

Under the Oregon statutes, in force in Alaska, a paper title is not essential to the maintenance of ejectment, and one who has been in possession of real property and has been ousted by a mere intruder may maintain ejectment for its recovery.

2. EJECTMENT ⬥⟹11—TITLE TO SUPPORT—PUBLIC LANDS—POSSESSORY RIGHT.

The title to public lands as between persons neither of whom connects himself with the government is considered as vested in the first possessor whose possession will support ejectment against a trespasser. This rule is especially applicable to tidelands in Alaska, where by reason of the coast conformation such lands are largely used as sites for various industries.

Morrow, Circuit Judge, dissenting.

In Error to the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

Ejectment by the Petersburg Packing Company and F. Schoenwald and S. T. Hills, as receivers and assignees of the Pacific Coast & Norway Packing Company, against Conrad A. Arness, Capella Arness, and John Doe, doing business as the Zenra Machine Shop Company. Judgment for plaintiffs, and defendants bring error. Affirmed.

John Rustgard, of Juneau, Alaska, for plaintiffs in error.

Hellenthal & Hellenthal and J. A. Hellenthal, all of Juneau, Alaska, for defendants in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. In an action of ejectment in the court below, the defendants in error recovered a judgment for the possession of a small parcel of tideland adjacent to a steamship dock and a cannery which they occupied and operated; they having alleged in their complaint that they had used and occupied the parcel in controversy, had cleared it of boulders and débris, and made it fit for the purpose of storing logs, pilings, pile drivers, and water craft thereon,

and had maintained cradles thereon to repair their boats and scows, and that at midnight December 7, 1915, without their consent, the plaintiffs in error entered upon said premises and removed therefrom the said cradles, pilings, logs, etc., and have since occupied and remained on the premises. The assignments of error present two principal questions: First, whether ejectment is the proper remedy of the defendants in error; and, second, whether ejectment will lie to recover tideland in the territory of Alaska.

[1] The action was brought, not as contended by the defendants in error, to recover an incorporeal hereditament, but to recover the actual physical possession of a parcel of tideland, and the court below aptly and appropriately instructed the jury concerning the nature of the possession which was necessary to support the action. It is not necessary under the law of Alaska that the plaintiff in ejectment shall have title in fee, or for life, or for a term of years, or color of title. The ejectment statutes of Oregon are adopted for Alaska. In Wilson v. Fine (D. C.) 38 Fed. 789, Judge Deady held that prior possession of real property is a sufficient legal estate therein to enable a party to maintain ejectment for the recovery of the possession of the same from an intruder. In Campbell v. Silver Bow Basin Min. Co., 48 Fed. 47, 1 C. C. A. 155, this court held that in Alaska, by the law of Oregon, which was there in force, a person in possession might maintain an action of ejectment to recover possession of real property from which he had been ousted by a mere intruder. In Sommer v. Compton, 52 Or. 173, 96 Pac. 124, 1065, it was held that prior possession of land for any length of time is prima facie evidence of title, and will authorize a recovery of possession against a mere volunteer, or one having no other rights than those of a trespasser. The same was held in Gallagher v. Kelliher, 58 Or. 557, 114 Pac. 943, 115 Pac. 596. And, again, in Kingsley v. United Rys. Co., 66 Or. 50, 133 Pac. 785, the court said:

"Naked possession vests a sufficient right of property in the person who has such possession as to permit him to hold the land against all the world except the true owner. Consequently, actual occupation or possession of real property is in its essential nature of an estate or right therein. Wilson v. Fine (D. C.) 38 Fed. 789."

And the court said that in Oregon the rule has become fixed that possession is a sufficient interest in land to enable one ousted therefrom to eject a trespasser or one unable to show a better title.

[2] The second question is whether ejectment lies to recover possession of public land where the plaintiff does not justify his possession by authority from the United States. The plaintiffs in error rely upon Burgess v. Gray et al., 16 How. 48, 14 L. Ed. 839, as sustaining the proposition that the mere possession of public land, without title, will not enable the possessor to maintain ejectment against any one who enters upon it. That case, however, does not so hold. The plaintiff in that case brought a suit to recover possession of land and to compel the defendants to abandon "their illegal claims." As the court said, it was in form a suit to obtain an injunction, to quiet the plaintiff in his possession, and to compel the adverse party to deliver up to be canceled evidences of title, "improperly and illegally obtained."

The court also said.

"The defendants are in possession, claiming title from the United States, and with evidences of title derived from the proper officers of the government. It is not necessary to inquire whether the title claimed by them is valid or not. The petitioner, as appears by the case he presents in his petition, has no title of any description derived from the constituted authorities of the United States, of which any court of justice can take cognizance. And the mere possession of public land, without title, will not enable the party to maintain a suit against any one who enters on it; and more especially he cannot maintain it against persons holding possession under title derived from the proper officers of the government."

The remarks of the court were made with reference to a "suit" brought not only to obtain possession but to cancel adverse claims, and the court recognized the settled rule that equity will not take jurisdiction for the sole purpose of restoring possession, and that, as the subject of jurisdiction in equity, the recovery of possession must be coupled with a demand for other relief. The recovery of possession alone is the ground and object of ejectment, and no case is found which holds that the mere possession of public land, without title, will not enable one to maintain ejectment against a trespasser who enters upon it. The contrary has been held in numerous decisions. In Coryell v. Cain, 16 Cal. 567, 573, Judge Field said:

"Actions for the possession of mining claims, water privileges, and the like, situated upon the public lands, are matters of daily occurrence, and, if the proof of the paramount title of the government would operate to defeat them, confusion and ruin would be the result. * * * And with the public lands which are not mineral lands, the title, as between citizens of the state, where neither connects himself with the government, is considered as vested in the first possessor, and to proceed from him. This possession must be actual and not constructive."

In Hart v. Cox, 171 Cal. 364, 153 Pac. 391, in an action of ejectment involving a parcel of desert land of the United States, where neither party relied upon a paper title, it was held that prior actual possession is sufficient to support the action. In Hanson v. Stinehoff, 139 Cal. 169, 72 Pac. 913, an ejectment case, the court sustained as against a trespasser the right of possession of one who occupied land consisting of a portion of an island in a river and a dry river bed, the property of the state.

By the Act of May 17, 1884, c. 53, § 8, 23 Stat. 26, Congress enacted that persons in Alaska "shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them." That statute conferred upon persons in possession more than a mere pedis possessio. It conferred the right to convey the possessory right to another. Carroll v. Price (D. C.) 81 Fed. 137; Martin v. Burford, 181 Fed. 922, 104 C. C. A. 360. The right of possession of the defendants in error does not depend upon that statute, they having acquired possession at a subsequent date. But the courts of Alaska have held that those who entered into possession of tideland subsequent to 1884 may, in any case in which public rights are not involved, maintain possession against an intruder. In Copper River Lumber Co. v. Humphreys, 2 Alaska, 39, Judge Wickersham held that one who actually occupied a small tract of public land for purposes of

manufacturing and sawing lumber was entitled to the exclusive possession thereof, under section 12 of the Act of Congress of March 3, 1891, c. 561, 26 Stat. 1100 (Comp. St. § 5080). The court said:

"There is some contention by the defendant that the land which he claims is above the ordinary high tide. It would make no difference, however, under the circumstances in this case, whether it was above or below ordinary high tide. If it is above high tide, the facts bring it fairly within the statute in relation to the disposal of lands for trade and manufactures, and, if it is below, the circumstances bring it clearly within the rule that the owner of uplands cannot be deprived of the use of the tideland in front of his upland holdings by a mere trespasser, and that he may construct wharves, mills, and approaches to the sea from his upland, and will be protected in such right by the injunctive process of the court."

In the case at bar the defendants in error own and operate a machine shop and a store on the uplands adjacent to the property in controversy, and at one side and entirely upon the tidelands they have constructed and maintained a cannery, warehouse, and a platform, all of which have been constructed since the year 1902. The plaintiffs in error come into this court assenting to that portion of the charge to the jury in which it was said that—

"While no one but the United States has or can have any strictly legal title to the tidelands in Alaska, yet it is the policy of our government to allow any one to occupy such lands, to possess them, to use them, to claim them as his own, for any useful purposes which do not interfere with navigation or the rights of fishery. * * * If a person is in possession of unappropriated public land of the United States, he has a right to such possession as against any other person who cannot show any better right."

And they took no exception to the court's instruction that—

"There is no evidence in this case that the occupation of the tideland in question at all interferes with the rights of navigation or of fishery."

In the brief of the defendants in error it is asserted, and it does not appear to be disputed, that in Alaska a substantial portion of all the towns have, with the tacit consent of the United States government, been built upon and over tidelands below mean high tide; that, due to the precipitous character of the uplands in Alaska, the tidelands have been taken possession of and improved to a greater extent than in perhaps any of the other territories previous to their admission as states; and that these rights of the first comer or prior possessor have been enforced against intruders, the same when the prior possession is of tidelands as when the possession is of uplands, the title to which is in the government of the United States.

To deny the right of possession of the defendants in error to the tideland here involved would be to deny their right to the possession of the cannery which they have constructed on tideland, and the dock which they use in connection with their business. The case of Bass v. Ramos, 58 Fla. 161, 50 South. 945, 138 Am. St. Rep. 105, cited by plaintiffs in error, differs materially from the case at bar. In that case the premises in controversy were beneath the navigable waters of Pensacola Bay. The plaintiff in ejectment was not in the actual possession thereof. He had but inclosed the same on two sides by posts and barbed wire, and he was not shown to be a riparian proprietor.

It is contended that certain documentary proof to show the right and title of the receivers was erroneously admitted in evidence. In the view which we take of the case, such evidence was superfluous, and its admission could not have prejudiced the plaintiffs in error. All that was in issue was the right of possession, and all that was recovered was the possession of the property in controversy. It was unnecessary to show how the possession was originally acquired. Table Mountain Tunnel Co. v. Stranahan, 20 Cal. 198, 208; Mining Co. v. Taylor, 100 U. S. 37, 42, 25 L. Ed. 541.

Error is assigned to the denial of the instruction requested by the plaintiffs in error that unless the jury found that both the receivers and the corporation plaintiff were entitled to the possession of the premises in dispute, the first as lessors, and the other as lessee, they could not find for either of them, but their verdict must be for the defendants. The jury did find that the defendants in error were entitled to the possession of the premises, the receivers as lessors, and the corporation as lessee. If the receivers were not necessary parties to the action, objection on that ground was waived in the court below. The plaintiffs in error were not injured by the refusal of the instruction. Adler v. Sewell, 29 Ind. 598. They cite Davis v. Coblens, 174 U. S. 719, 19 Sup. Ct. 832, 43 L. Ed. 1147, where the court quoted the rule that, if one plaintiff in a joint action in ejectment cannot recover, his coplaintiff cannot. That rule applies to actions in ejectment brought by plaintiffs as tenants in common or as joint tenants, or others with diverse interests in the property. It has no application to a case where lessor and lessee join in an action for the recovery of possession.

The judgment is affirmed.

MORROW, Circuit Judge (dissenting). This is a statutory action in ejectment brought under the provisions of sections 301 and 303 of the Alaska Code of Civil Procedure (Act of June 6, 1900, c. 786, 31 Stat. 383; Carter's Ann. Code Civ. Proc. Alaska, pp. 210, 211), providing:

"Sec. 301. Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action. Such action shall be commenced against the person in the actual possession of the property at the time, or, if the property be not in the actual possession of any one, then against the person acting as the owner thereof."

"Sec. 303. The plaintiff in his complaint shall set forth the nature of his estate in the property, whether it be in fee, for life, or for a term of years, and for whose life, or the duration of such term, and that he is entitled to the possession thereof, and that the defendant wrongfully withholds the same from him to his damage in such sum as may be therein claimed. The property shall be described with such certainty as to enable the possession thereof to be delivered if a recovery be had."

These two sections limiting actions of ejectment under the Alaska Code to legal titles and rights of possession were adopted from the Oregon Code of Civil Procedure passed in 1862, General Laws of Oregon, 1843–1872, pp. 175, 176; Lord's Oregon Laws, vol. 1, pp. 301–304. At the time of their adoption they had been construed by

the Supreme Court of Oregon, and the presumption is that they were adopted in the light of that construction. In Thompson v. Wolf, 6 Or. 308–311 (decided in December term, 1877), the Supreme Court of Oregon held that—

In an action of ejectment "it is necessary that the plaintiff set forth the nature of his estate in the property, whether it be in fee, for life, or for a term of years (Civ. Code, § 315), thereby enabling the courts to settle the question of title, which is the great end of the action of ejectment with us."

In a more recent decision, the same court holds that the action of ejectment under the Oregon Code involves the right of property as well as the right of possession.

In Chance v. Carter, 81 Or. 229–237, 158 Pac. 947–950, the Supreme Court of Oregon said:

"The action of ejectment involves both the right of possession and the right of property. The right of possession depends upon a right of property, because the right of possession must be traced to some estate in the property; and there can be no right of possession unless it is referable to and is founded upon an estate in the property."

The Code provisions and the construction placed upon them by the Supreme Court of Oregon are in accordance with the law of the federal jurisdiction as declared by the Supreme Court of the United States.

In Burgess v. Gray, 16 How. 48–64 (14 L. Ed. 839), Chief Justice Taney, speaking for the court, said:

"And the mere possession of public land, without title, will not enable the party to maintain a suit against any one who enters on it."

See, also, Oaksmith's Lessee v. Johnson, 92 U. S. 343–347, 23 L. Ed. 682.

It is now the settled law that upon the acquisition of territory the United States acquires title to the tidelands equally with the title to the uplands, but with respect to the former the government holds it only in trust for the future states that may be erected out of such territory. Knight v. United States Land Association, 142 U. S. 161–183, 12 Sup. Ct. 258, 35 L. Ed. 974; Shively v. Bowlby, 152 U. S. 1–57, 14 Sup. Ct. 548, 38 L. Ed. 331. But while such territory remains in a territorial condition, the entire dominion and sovereignty, national and municipal, rests with the United States, and over it Congress has complete legislative authority and may grant, for appropriate purposes, titles or rights in the soil below high-water mark of tide waters. Shively v. Bowlby, supra, 152 U. S. 58, 14 Sup. Ct. 548, 38 L. Ed. 331; Alaska Pac. Fisheries v. United States, 248 U. S. 78, 39 Sup. Ct. 40, 63 L. Ed. 138, decided Dec. 9, 1918.

Under this authority Congress, in the act of May 17, 1884 (23 Stat. 24), establishing a civil government for Alaska, provided in section 8 as follows:

"That the Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them, but the terms under which such persons may acquire title to such land is reserved for future legislation by Congress."

In the Act of March 3, 1891, entitled "An act to repeal timber-culture laws, and for other purposes" (26 Stat. 1095), after making provisions concerning the entry of town sites in Alaska and for the possession and occupation of public lands in that district for the purpose of trades or manufactures, it was provided in section 12 (Comp. St. § 5080):

"That in case more than one person, association or corporation shall claim the same tract of land, the person, association or corporation having the prior claim by reason of possession and continued occupation shall be entitled to purchase the same."

In Carroll v. Price (D. C.) 81 Fed. 137, these statutes were held to be a recognition by Congress that a prior possession of land in Alaska was a right of possession and that an action for ejectment would lie to determine such right of prior possession; that this right of possession applied to tidelands as well as uplands, subject, however, to the public right of navigation; and that such right of possession would be determined by the same rules of law as govern similar rights on the uplands. The action in ejectment was accordingly sustained in that case.

In Heckman v. Sutter, 119 Fed. 83, 55 C. C. A. 635, this court had before it a controversy as to the right of possession of a certain tidelands flat used for fishing purposes on Tongass Narrows in Alaska. The plaintiffs derived their right of possession from an Indian who was in possession of the land at the time of the passage of the Act of May 17, 1884. The defendant in 1900 undertook to operate the same ground for fishing purposes to the exclusion of the plaintiffs. The plaintiffs brought suit against the defendant to restrain such interference, and the District Court in Alaska, upon the showing that the plaintiffs' grantor was in possession of the tide flat on May 17, 1884, granted the injunction. This court in sustaining that decree said:

"The prohibition contained in the act of 1884 against the disturbance of the use or possession of any Indian or other person of any land in Alaska claimed by them is sufficiently general and comprehensive to include tidelands as well as lands above high-water mark. * * * Congress saw proper to protect by its act of 1884 the possession and use by these Indians and other persons of any and all lands in Alaska against intrusion by third persons, and so far has never deemed it wise to otherwise provide. That legislation was sufficient authority, in our opinion, for the decree of the court below in securing the complainants in the use and possession of land which the evidence shows and the court found was held and maintained at the time of their disturbance therein by the defendants, and for years theretofore had been so held and maintained."

It will be observed that the right of possession claimed by the plaintiffs was determined by this court to have been secured to them by the express terms of the act of Congress of 1884, and not under a mere recognition of a general right of an American citizen to go upon public lands and occupy and use the same with the view of ultimately obtaining title thereto from the general government when the same should be open to purchase.

The plaintiffs in the present case did not derive their alleged right of possession from any one who was in possession of either the up-

lands, the tidelands in that locality or the tideland in dispute, at the time of the time of the passage of the act of Congress of 1884.

I call attention to this distinction now for the reason that we are dealing in this case with a suit in ejectment under a statute, and what we are required to determine is whether the plaintiffs had such right of possession of the premises prior to the entry of the defendants as will entitle the plaintiffs to maintain this action. We are not concerned with plaintiffs' prior possession of the land in controversy, except in so far as it may furnish a right of action in ejectment under the statute of Alaska.

In Malony v. Adsit, 175 U. S. 281–289, 20 Sup. Ct. 115, 44 L. Ed. 163, the action was ejectment, and the plaintiff had alleged in his complaint, and the court had found as a fact, that for more than nine years prior to April 9, 1891, he and his grantors were the owners by right of prior occupancy and actual possession of the land in dispute. This finding by the court placed the plaintiffs' occupancy and possession of the land in dispute at and prior to the Act of May 17, 1884. The Supreme Court, referring to the condition of things in Alaska under this act and the Act of March 3, 1891, said:

> "The only titles that could be held were those arising by reason of possession and continued possession, which might ultimately ripen into a fee-simple title under letters patent issued to such prior claimant when Congress might so provide by extending the general land laws or otherwise."

The action of ejectment in that case was sustained, the court citing with approval the decision of the District Court of Alaska in Carroll v. Price, supra.

In McCloskey v. Pacific Coast Co., 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673, the Pacific Coast Company brought suit to enjoin McCloskey from erecting a structure on tidelands in front of property claimed by the plaintiff, alleging that as a littoral owner of lands abutting on the water of the sea it was entitled to free access to and from the navigable waters fronting thereon. The District Court awarded the injunction on the ground that the plaintiff was the littoral owner of the upland in front of which was the tideland in controversy. This court did not find that the plaintiff was in fact the littoral owner and possessed of an individual right as distinguished from the public right of access to the navigable waters in front of its land, but did find that the plaintiff's grantors claimed the possession and the right of possession of all the tidelands in front of its property at the time of the passage of the Act of May 17, 1884, and had maintained that claim ever since, except in so far as it had conceded to public use a certain street and sidewalk therein described, and, as under that act the plaintiff was entitled to have its possession of the tidelands in controversy protected, it was entitled to secure that protection by any appropriate suit or action. The injunction was accordingly sustained. This case has a bearing on the present controversy as the plaintiffs in this case appear to make some claim upon the ground that they have been in possession of the uplands in front of which is the tideland in dispute. The claim cannot be maintained.

In Columbia Canning Co. v. Hampton, 161 Fed. 60, 88 C. C. A. 224, the action was brought by Hampton to restrain the Columbia Canning Company from interfering with or obstructing the plaintiff in the use of a structure which he had commenced to erect for a fish trap on the shore in front of and abutting upon a tract of land entered by the plaintiff on the 19th of April, 1905, under what is known as "Soldier's Additional Homestead Scrip Act" (Comp. St. § 4594). The court below issued an injunction. This court held that the plaintiff could not acquire a possessory right under his upland location to occupy the shore and maintain an action against the defendant for interfering with or obstructing him in the use of such shore, nor had he, by his prior possession of the tideland, acquired a possessory right under the Act of May 17, 1884. The court repeated what had been said in previous decisions that the Act of May 17, 1884, did not provide for the protection of the possession of any land by any person or persons who might acquire possession or make claim thereto after that date. The decree of the District Court was accordingly reversed.

In Russian-American Co. v. United States, 199 U. S. 570–576, 26 Sup. Ct. 157, 50 L. Ed. 314, the Supreme Court held that section 8 of the Act of May 17, 1884, simply recognizes the right of such Indians or other persons as were in possession of land at the time of the passage of that act. The party claiming the possessory right in that case did not take possession of the land until five years after the act of 1884 was passed. The court held that it was a mere trespasser upon the land which it claimed by possessory right. See, also, Decker v. Pacific Coast Co., 164 Fed. 974, 91 C. C. A. 102; Dalton v. Hazelet, 182 Fed. 561, 105 C. C. A. 99; Worthen Lumber Mills v. Alaska-Juneau Gold Min. Co., 229 Fed. 966–969, 144 C. C. A. 248; Pacific Coast Co. v. James, 234 Fed. 595, 148 C. C. A. 361; Sheldon v. Messerschmidt, 247 Fed. 104, 159 C. C. A. 322; Whelpley v. Grosvold, 249 Fed. 812–815, 162 C. C. A. 46.

In addition to the Act of May 17, 1884, protecting the Indians and other persons in Alaska in their possession of any lands actually in their use or occupation at the time of the passage of that act, Congress in section 15 of the Act of March 3, 1891 (26 Stat. 1101 [Comp. St. § 5096a]), reserved the body of lands known as Annette Islands in Southeastern Alaska for the use of the Metlakahtlan Indians in prosecuting their fishing industries. This reservation included the adjacent waters and submerged land, as well as the upland. Alaska Pacific Fisheries v. United States, supra. By the Act of February 6, 1909, c. 78, 35 Stat. 598, the Cordova Bay Harbor Improvement & Town-Site Company was permitted to purchase not to exceed 2,000 acres of non-mineral lands of the United States as might be selected by said corporation and approved by the Secretary of the Interior, including tide or mud flats situated at the head of Cordova Bay. The tract selected was to have a frontage of not to exceed two miles on the wharfage and dock area and was to be reserved and remain under the control of the United States, in trust however for the future state which may be created, including the same or any part thereof within its boundaries. This reservation of tidelands was plainly in the interest of navigation and fishery.

I find nowhere in the statutes any such reservation of the tidelands in front of the town of Petersburg for the special benefit of that community or of any of its citizens or for any one, from which fact I draw the conclusion that no possessory or other rights have been created or reserved in favor of any one in such lands, but that they are free and open to the public for the uses and purposes of navigation and fishery.

I think that the occupancy of tidelands such as the plaintiffs had prior to their ouster by the defendants was not a right of possession in any legal sense. They had the right to use the place for the purpose of navigation and fishery, including the beaching, repairing, and mooring of floating property; but they had no right to exclude others from using the shore at that place for similar purposes. The possession which they had was therefore insufficient to support an action in ejectment, and the court should have so held in response to any one of several objections and motions made by the defendants.